Mitchell STROUD, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 02A05–9106–PC–199.

Court of Appeals of Indiana, Fifth District.

March 5, 1992.

Transfer Denied April 23, 1992.

---

Susan K. Carpenter, Public Defender, Margaret Hills, Sp. Asst., Frankfort, Ky., for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-respondent.

SHARPNACK, Judge.

Mitchell Stroud appeals the court's denial of his petition for post-conviction relief (P-CR). We affirm.

Stroud presents two issues for our review, which we restate as:

(1) Whether Stroud was denied effective assistance of counsel.

(2) Whether the trial court erred by permitting into evidence testimony regarding the show-up identification of Stroud.

The facts most favorable to the judgment are set out in *Stroud v. State* (1979), 272 Ind. 12, 395 N.E.2d 770 as follows:

> On April 3, 1978, Paul Chapman and the decedent Daniel Norris were hitchhiking in the city of Fort Wayne when they were picked up by Greg Brownlow and appellant Mitchell Stroud. Brownlow was driving the car. After they had travelled a short distance, Brownlow pulled the car into a darkened parking lot. Stroud pointed a gun at Chapman and Norris, and Brownlow asked them how much money they had. They were ordered to raise their hands, and while Brownlow held the gun on the two, Stroud searched them, removing their wallets and other belongings from them. Brownlow then handed the pistol back to Stroud, who kept it trained on Chapman and the decedent Norris. They were then told to close their eyes. Norris refused to shut his eyes, and several more words were exchanged. Norris then grabbed for the gun Stroud was holding. As the two struggled for control of the gun, two shots were fired. The first struck appellant Stroud on the arm. The second shot struck Norris in the head, and he died from this wound a short time later. The struggle over the gun and the shootings took place very quickly.

The record reveals that immediately after the shooting Chapman left the car and ran to a bar about eleven blocks away to summon help. At approximately 1:30 a.m., police officers arrived on the scene. After the officers interviewed Chapman, they broadcast a description of the two assailants to all squad cars. Meanwhile, sometime around 2:00 a.m., Stroud and Brownlow visited the home of a friend. Stroud had a gunshot wound to his arm, which the friend wrapped in a towel. Afterwards, the friend drove Stroud to a hospital.

As Stroud was waiting in the emergency room of the hospital, Officer Figel entered. Approximately thirty minutes earlier, Figel had heard over his radio that someone matching Stroud's description was one of two suspects recently involved in a robbery-shooting. Figel approached Stroud and questioned him about his wound. Becoming suspicious, Figel radioed for assistance and requested that the detectives bring Chapman to the hospital to possibly identify Stroud as one of his attackers.

Stroud was in the treatment room when the police arrived at the hospital with Chapman. While the police were conversing with Stroud's friend, Stroud was wheeled out into the waiting room. Chapman approached Stroud and asked him to lower his hands from his face so that he could see him. When he did, Chapman positively identified Stroud as one of his assailants and Stroud was arrested by Officer Figel.[1]

Later that same day, Stroud gave two statements regarding the incident. Around 10:30 a.m., Stroud waived his *Miranda* rights and stated that he had been shot while jogging. Around 1:30 p.m., Stroud again waived his *Miranda* rights and made a video statement that he had indeed participated in the robbery and shooting in question, but that the shooting had been accidental.

Stroud was subsequently charged with felony murder. During his jury trial, Stroud testified on his own behalf and admitted that he had participated in the robbery and shooting of April 4. However, Stroud again claimed that the shooting was accidental. The jury found Stroud guilty as charged, Stroud appealed the jury's verdict, and, in *Stroud v. State* (1979), 272 Ind. 12, 395 N.E.2d 770, the supreme court unanimously affirmed his conviction.

---

1. According to Officer Figel's report, the arrest occurred at 3:30 a.m.

We begin our analysis by stating that, as the petitioner, Stroud bears the burden of proof in a petition for post-conviction relief. *Popplewell v. State* (1981), Ind., 428 N.E.2d 15, 16. The post-conviction court is the trier of fact and the sole judge of the weight and credibility of the evidence. *Id.* Where the petitioner appeals the denial of a P–CR petition he appeals from a negative judgment. In such cases, it is only where the evidence is without conflict and leads to but one conclusion, and the court below has reached the opposite conclusion, that we will disturb the decision of the post-conviction court as being contrary to law. *Id.*

First, we address the issue of whether Stroud was denied effective assistance of counsel. Stroud argues that he received ineffective assistance of counsel for three reasons: (1) counsel failed to file a motion to suppress or otherwise object to the identification procedure used by the police in order to obtain a positive identification of Stroud shortly after the crime; (2) counsel unnecessarily brought to the jury's attention the fact that as a juvenile Stroud had had prior contacts with the criminal justice system; and, (3) counsel pursued the theory that Stroud's shooting of Daniel Norris was accidental.

In order for Stroud to prevail on his claim of ineffective assistance of counsel, he must satisfy a two-part test. He must show that: (1) his counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's deficient performance the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Mott v. State* (1989), Ind., 547 N.E.2d 261. Stroud must present strong and convincing evidence to rebut the presumption that counsel was competent. *Clark v. State* (1990), Ind., 561 N.E.2d 759. Isolated poor strategy, inexperience or bad tactics does not necessarily amount to ineffectiveness. *Mott v. State* (1989), Ind., 547 N.E.2d 261.

We initially consider Stroud's argument that his counsel was ineffective because he failed to file a motion to suppress or otherwise object to the identification procedure used by the police at the hospital to obtain a positive identification of Stroud. According to Stroud, the evidence surrounding the one-on-one show-up identification either should not have been admitted at trial or should have been suppressed because the show-up was unnecessary and unduly suggestive, and carried with it an overwhelming risk of misidentification.

When an appellant predicates an ineffective assistance of counsel claim on counsel's failure to interpose an objection, the appellant must demonstrate that a proper objection would have been sustained by the trial court. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 396. Additionally, the decision whether or not to file particular motions is one of trial strategy, and, absent an express showing to the contrary, will not indicate ineffective assistance of counsel. *Little v. State* (1986), Ind., 501 N.E.2d 447, 449.

It is well established that while one-on-one confrontations are inherently suggestive, they are not *per se* improper. *Brafford v. State* (1987), Ind., 516 N.E.2d 45, 49. One-on-one confrontations are proper where they occur shortly after the crime has been committed because "[t]he details of the crime would be fresh in the victim's mind and would thus be less likely to give rise to later misidentification." *Savage v. State* (1988), Ind., 523 N.E.2d 758, 761. Even if a show-up identification should prove to be unnecessarily suggestive, that alone would not require exclusion of the evidence if the identification was reliable under the totality of the circumstances. *Lyons v. State* (1987), Ind., 506 N.E.2d 813, 815. In evaluating the likelihood of misidentification, the following five factors must be considered:

"(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of

time between the crime and the confrontation."

*Id.*

Here, Stroud has failed to establish that, had his counsel objected to the show-up identification, the objection would have been sustained. To the contrary, the record indicates that under the totality of the circumstances Chapman's identification of Stroud was reliable. Furthermore, Stroud has not expressly demonstrated that counsel's failure to file a motion to suppress indicates ineffective assistance of counsel. Specifically, Stroud has not demonstrated that, but for counsel's failure to file the motion, the result of the proceedings would have been different. According to the record, one of Stroud's victims provided eyewitness testimony at trial that Stroud had been one of his assailants. In addition, Stroud provided to the trial court both a video statement and additional testimony admitting to shooting the victim during the robbery. In contrast to what Stroud argues, counsel's strategic decision not to challenge Stroud's pre-trial identification was inconsequential because identification was not an issue at trial. *See Coble v. State* (1985), Ind., 476 N.E.2d 102, overruled on other grounds by implication by *Gilliam v. State* (1987), Ind., 508 N.E.2d 1270, *see Hahn v. State* (1989), Ind.App., 533 N.E.2d 618; *Cf. Glaser v. State* (1991), Ind.App., 575 N.E.2d 329 (trial counsel was ineffective for failing to object to admissibility of identification testimony where identification was major issue at trial); *Pemberton v. State* (1990), Ind., 560 N.E.2d 524 (trial counsel was ineffective for not preserving for appeal admissibility of identification testimony where identification was major issue at trial).

While Stroud directs us to *Glaser v. State* (1991), 575 N.E.2d 329 to support his argument here, we find *Glaser* distinguishable from his case. In *Glaser*, the appellate court held that the defendant's trial counsel was ineffective because counsel failed to object to the admissibility of show-up identification testimony at trial. *Id.* at 332. In *Glaser*, however, the major issue at trial was identification, the record was silent both as to the lapse of time between the crime and the show-up and the available lighting during the commission of the crime, and the victim's view of the perpetrator was questionable. *Id.* at 331. In our case, the record indicates not only that the surviving victim had ample opportunity to view Stroud during the commission of the crime, but also that the victim had focused his attention on Stroud. In addition, the victim provided an accurate description of Stroud to the police immediately after the crime and demonstrated immediate certainty that Stroud was one of his assailants when he later confronted Stroud at the hospital. Also, only two to three hours passed between the time of the crime and the victim's confrontation of Stroud, and, as we have already stated, identification was not an issue at trial in Stroud's case. For the reasons stated, Stroud's argument that his counsel was ineffective because he did not object to or try to suppress the evidence surrounding Stroud's show-up identification fails because the identification was not unnecessarily suggestive and was reliable under the totality of the circumstances.

Next we consider Stroud's argument that his counsel was ineffective because he brought to the jury's attention the fact that as a juvenile Stroud had had contacts with the criminal justice system. According to Stroud's counsel, he brought this information to the attention of the jury because he believed that Stroud would enhance his credibility with the jury if he truthfully revealed these negative aspects of his life. As we have already mentioned, matters of strategy and judgment alone are insufficient to establish ineffective assistance of counsel. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 396.

In addition, we point out that "the admission of inadmissible and irrelevant evidence, even evidence of prior criminal acts, may be harmless error where the conviction is supported by substantial or overwhelming evidence of guilt." *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 294, *cert. denied by Boyd v. Indiana* (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d

860. Here, the evidence, consisting of an eyewitness account of the crime, positive identification of Stroud as one of the perpetrators, and Stroud's own confessions, established Stroud's guilt to a substantial degree. Any admission of evidence concerning Stroud's prior criminal acts was, at most, harmless error.

■ Finally, Stroud argues that his counsel was ineffective because he pursued the theory that Stroud's shooting of the victim was accidental. According to Stroud, because he was charged with felony murder, no legal basis existed for such a defense. Stroud points out that in Indiana the state need only establish that the defendant intended to commit the underlying felony in order to find a defendant guilty of felony murder.

Even if we assume counsel's strategy here might be construed to have fallen below an objective standard of reasonableness, Stroud has nonetheless failed to demonstrate ineffective assistance of counsel. Specifically, Stroud has failed to prove that the result of his trial would have been any different had his counsel not pursued the defense of accident at trial.

■ In summary, because Stroud has failed to demonstrate in any manner how his counsel was ineffective or how he was prejudiced, we find no error on this issue.[2]

■ Second, we address the issue of whether the trial court erred by permitting into evidence testimony regarding the show-up identification of Stroud. Specifically, Stroud argues both that because the identification procedure in itself was unnecessary and unduly suggestive and because the risk of misidentification was overwhelming, Chapman's testimony regarding his identification of Stroud at the hospital shortly after the crime should not have been permitted at trial. As we have already held, Stroud's show-up identification was not unnecessarily suggestive and was reliable under the totality of the circumstances.

■ We also point out that a review of the record indicates that when Chapman provided this testimony to the trial court Stroud neither objected to nor moved to strike the testimony. It is the general rule in this state that a party must object to evidence at the time it is offered into the record in order to keep it out of the record of proceedings. A party who fails to make a timely objection, or, for that matter, to file a timely motion to strike, normally waives the right to have the evidence excluded at trial and the right on appeal to assert the admission of evidence as erroneous. See, e.g., *Dean v. Dean* (1982), Ind. App., 439 N.E.2d 1378, 1385; *Redslob v. Redslob* (1982), Ind.App., 433 N.E.2d 819, 822; *Central Indiana Carpenters Welfare Fund v. Ellis* (1980), Ind.App., 412 N.E.2d 865, 866 n. 1; *Bartoszek v. Marshall* 91970), 148 Ind.App. 214, 264 N.E.2d 635. In failing to make a timely objection or motion, the party is, in effect, acquiescing in the admission of the evidence.

In *Samaniego v. State* (1990), Ind., 553 N.E.2d 120, *rehearing denied*, the defendant alleged that he had been subjected to an impermissible one-on-one showup which was unnecessarily suggestive and thus inadmissible. In a separate concurring opinion, two of our supreme court justices stated that, while the procedure employed by the police deserved the strongest judicial condemnation, the defendant's claim of inadmissibility was deemed waived because

**2.** Stroud also contends that he received ineffective assistance of counsel from his appellate counsel, who was the same person who represented him at trial, for two reasons. Stroud argues his appellate counsel: (1) failed to preserve and perfect for appeal the issue of whether the show-up identification was unduly suggestive; and, (2) failed to pursue the issue of whether counsel erred by exposing Stroud's juvenile history to the jury. Because the same standard is applied to judge the effectiveness of appellate counsel as is used to judge the effectiveness of trial counsel, *Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1059, *cert. denied by Smith v. Indiana* (1988), 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 347, and because we have already addressed these alleged errors, we simply hold that Stroud has failed to present any error on this issue because he has not demonstrated any manner in which his appellate counsel's performance fell below an objective standard of reasonableness or that but for appellate counsel's deficient performance the result of the proceedings would have been different.

the defendant had made no contemporaneous objection to the crucial identification testimony at trial. *Id.* at 127.

A post-conviction relief proceeding is not a substitute for trial and appeal; rather, it is a process for raising issues which were either unknown or unavailable at trial. *Gee v. State* (1984), Ind., 471 N.E.2d 1115, 1117. Stroud's failure to raise the issue of the admission of evidence concerning Chapman's identification of him in a showup both before and during his trial and on direct appeal precludes our consideration of this issue in a post-conviction proceeding. *Id.*, citing *Williams v. State* (1982), Ind., 442 N.E.2d 1063 and Ind. R.P.C. 1.

For the reasons stated, we hold that Stroud has waived consideration of this issue.

AFFIRMED.

BARTEAU and CONOVER, JJ., concur.