Carl L. KELLEY, Appellant–Plaintiff,

v.

Alfred WATSON, Appellee–Defendant.

No. 49A05–9503–CV–115.

Court of Appeals of Indiana.

March 14, 1997.

Michael K. Sutherlin, Patricia Orloff Grow, Michael K. Sutherlin & Associates, Indianapolis, for Appellant.

John F. Kautzman, Indianapolis, for Appellee.

## OPINION

RUCKER, Judge.

Plaintiff–Appellant Carl Kelley appeals from an adverse jury verdict on his complaint against Defendant–Appellee Alfred Watson alleging civil rights violations pursuant to 42 U.S.C. § 1983. He raises several issues for our review which we rephrase as: 1) Did the trial court err in giving certain jury instructions? 2) Did the trial court err in refusing certain of Kelley's proposed instructions? 3) Did the trial court err in the admission and exclusion of certain evidence? 4) Did the trial court err in admitting testimony concerning items not produced during discovery? We affirm.

The facts most favorable to the verdict reveal that on December 14, 1990 Sergeant Alfred Watson of the Indianapolis Police Department's Metro Gang Task Force received information that an individual for whom police held an outstanding warrant would be present at 1556 North Rural Street in Indianapolis. That address was the home of the Reverend Carl Kelley, his wife and their three children. At approximately 9:00 p.m. that evening Watson along with several other officers arrived at the address. Several officers surrounded the residence while Watson approached the front door and either rang the doorbell or knocked on the door. When a young man later identified as Kelley's son, Chad, answered the door Watson entered the residence. He announced that he was looking for the suspect named in the warrant and demanded identification from Kelley, Kelley's son and a family friend. After concluding that the suspect was not present at the home

the officers left. Later that evening Kelley telephoned the police department to complain about the entry into his home. An officer was dispatched to investigate the complaint but no formal report was prepared. Thereafter on December 17, 1990 Kelley filed a formal complaint against Watson with the Indianapolis Citizens Police Complaint Review Board. In the complaint Kelley alleged that Watson had entered the home without permission and that Watson, dressed in plain clothes, initially had failed to identify himself as a police officer. The complaint was assigned to the Police Internal Affairs Division for investigation. After the investigation the Board determined that there was inadequate evidence to sustain the complaint and thus no action would be taken against Watson. Several months later Kelley again complained about the entry during a call-in radio program on which Watson was being interviewed. After that incident, Watson filed a complaint for damages against Kelley alleging defamation based on Kelley's allegations. Watson took no action on the defamation claim and it was eventually dismissed in June 1994.

Meanwhile on May 20, 1991 Watson was assigned to investigate a gang-related assault on Jamie Kirk. During a taped interview Kirk informed Watson that one of his assailants was Chad Ramsey and that on the day following the assault Chad Ramsey's father had threatened to kill him. On May 30, 1991 Watson prepared a probable cause affidavit in which he related the incident and named Carl Kelley as the father of Chad Ramsey and the person who had made the threat. Based on the affidavit a charge of intimidation was filed against Kelley and a warrant was issued for his arrest. Kelley was arrested at his home pursuant to the warrant on May 30, 1991. He was transported to the county jail where he remained until he was released on his own recognizance the following day. Shortly thereafter Kirk was asked to identify Kelley and his son, Chad, as the persons involved in the incident. Kirk indicated that Chad Kelley and his father, who are African–Americans, were not involved and rather all of his assailants were Caucasian. The charge against Kelley was thereafter dismissed.

Kelley initiated the present action on January 10, 1992 by filing a complaint against Watson alleging constitutional violations and seeking relief pursuant to 42 U.S.C. § 1983.[1] A trial was conducted on January 26 and 27, 1995, and thereafter the jury returned a verdict in favor of Watson. This appeal ensued.

### I.

Kelley contends the trial court erred in giving various jury instructions. He first challenges Final Instruction Nos. 8, 12, 15 and 16 which read:

### FINAL INSTRUCTION NO. *8*

Actions of police officers are to be judged by the factual considerations of everyday life. An assessment of the reasonableness of an officer's conduct should take into consideration, among other things, the responsibility of the police to prevent crime and to apprehend offenders.

*Record* at 288.

### FINAL INSTRUCTION NO. 12

The constitution does not guarantee that only the guilty will be arrested, detained or investigated. The mere fact that Plaintiff was investigated and arrested, does not itself establish that Plaintiff's rights under either Indiana state law or the United States Constitution were violated.

*Record* at 292.

### FINAL INSTRUCTION NO. *15*

You are hereby instructed that in your examination of the reasonableness of the officer's conduct in this case, you should examine only the facts and circumstances known to the officer at the time that he acted. Neither the United States Constitution nor Indiana state law guarantee that only the guilty will be arrested or detained. Instead, you must focus on whether the officer acted reasonably at the time he acted, based upon the facts known to him,

and not on the ultimate guilt or innocence of Carl Kelley.

*Record* at 295.

### FINAL INSTRUCTION NO. *16*

A reasonable mistake which leads to the arrest or detention of an individual does not violate the arrestee or detainee's constitutional rights. Therefore, if you find that the conduct of the individual Defendant was reasonable, and that if a reasonable mistake was made, then you may find in favor of the Defendant.

*Record* at 296. According to Kelley each of these instructions is argumentative, serving only to bolster Watson's position before the jury and in particular, Final Instruction No. 8 gives special consideration to Watson's stature as a law enforcement officer.

■ Even assuming without deciding that Kelley's assertions are correct, the giving of these instructions is cause for reversal only if the instructions as a whole failed to inform the jury as to the applicable law or otherwise misled the jury. *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1122 (Ind. Ct.App.1995), *trans. denied.* The giving of jury instructions is a matter within the trial court's sound discretion, which we review only for abuse. *Weller v. Mack Trucks, Inc.,* 570 N.E.2d 1341 (Ind.Ct.App.1991). An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict. *Koziol v. Vojvoda,* 662 N.E.2d 985 (Ind.Ct.App.1996).

■ Here, the trial court's instructions as a whole adequately inform the jury as to the applicable law and are not misleading. In addition, the record reveals that immediately prior to giving Final Instruction No. 8 the court gave an instruction which advised that a police officer's testimony is entitled to no exclusive sanctity and that an officer who takes the witness stand subjects his testimony to the same examination and the same tests as does any other witness, that the jury should not believe a witness merely because

---

1. The complaint, filed as a cross-claim in Watson's defamation action, also alleged a state law claim of abuse of process. However the abuse of process claim was withdrawn during trial and the jury was instructed only as to the federal constitutional claims.

he is a police officer, that a police officer stands in no higher station in the community than any other persons and that his testimony is held to have no greater weight. Thus the giving of Final Instruction No. 8 as well as the remaining instructions did not constitute an abuse of discretion.

■ Kelley next complains that the trial court's instructions as a whole fail to set forth the proper objective standard to be used in assessing a police officer's conduct. Citing *Briggs v. Malley,* 748 F.2d 715 (1st Cir.1984), *aff'd* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), Kelley argues the conduct of government officials is to be measured by an objective reasonableness standard, and conduct which violates clearly established statutory or constitutional rights of which a reasonable person would have known will support § 1983 liability. According to Kelley the trial court did not clearly delineate the *Briggs* standard, and in fact, certain of the court's instructions erroneously advised that Watson's subjective intent was at issue. In particular, Kelley objects to Final Instruction No. 20 regarding the existence of consent to enter the Kelley residence. That instruction advised that if a police officer had a reasonable belief that the person giving consent to enter a residence had the common authority to give that consent then the entry was lawful.

We have no quarrel with the proposition that the determination of consent to enter, as with other factual determinations bearing upon search and seizure, "must be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Illinois v. Rodriguez,* 497 U.S. 177, 188 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). We agree with Kelley that the essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials. *Delaware v. Prouse,* 440 U.S. 648, 653–654, 99 S.Ct. 1391, 1395–1396, 59 L.Ed.2d 660 (1979). However we fail to see how the language in Final Instruction No. 20 and in other instructions challenged by Kelley serves to depart from that standard. Final Instruction No. 20 refers to an officer's "reasonable belief." *Record* at 300. Final Instruction No. 13 regarding probable cause refers to facts and circumstances within a police officer's knowledge which would warrant a "person of reasonable caution" to believe that an offense has been or is being committed. *Record* at 293. Final Instruction No. 16 advises that a "reasonable mistake" which leads to the arrest or detention of an individual does not violate the arrestee or detainee's constitutional rights and that if the conduct of the defendant was "reasonable" then the jury may find in favor of the defendant. *Record* at 296. This language along with that in Final Instruction Nos. 8, 14 and 15 properly informed the jury that the test for liability under § 1983 is whether the defendant acted reasonably under the circumstances. We find no error here.

■ Kelley also claims that Final Instruction No. 16, concerning the defense of mistake, was improper because the evidence did not support the giving of the instruction. According to Kelley the undisputed evidence shows that Watson did not make a mistake and that he intentionally included Kelley's name in the warrant affidavit and falsely attributed it to the victim, Jamie Kirk. However, the record discloses that although Watson admitted adding Kelley's name to the affidavit, he claimed he did so because he had obtained information from other sources that led him to believe Kelley was the father of assailant Chad Ramsey and the person who threatened Kirk. Thus the evidence supported the giving of the instruction.

■ Kelley next claims the court erred in giving Final Instruction No. 17 which reads: "You are instructed that under Indiana Law, the prosecuting attorney makes the determination whether to charge a suspect with a crime." *Record* at 297. Kelley points out that the prosecuting attorney as well as an impartial magistrate must depend upon the sworn statement of a police officer in order to make a probable cause determination, and while the prosecutor's decision is discretionary a correct decision depends upon an hon-

est and candid representation of all relevant facts by the officer. Because the instruction at issue fails to include this information, Kelley claims, the court erred in reading it to the jury.

We agree that the foregoing instruction is incomplete and that, standing alone, its effect would be to mislead the jury. However the instruction was given in conjunction with other instructions which more fully explained the role of the prosecutor and magistrate in the issuance of an arrest warrant. For example, Final Instruction No. 11 advised the jury that if an arrest is made under a warrant but the warrant was secured on the basis of knowingly or recklessly false and misleading statements or omissions made to the prosecutor or the magistrate by the officer, "then there is no probable cause for the arrest of the Plaintiff and you must find for the Plaintiff." *Record* at 291. Thus the instructions as a whole were a complete statement of the law and did not mislead the jury.

 Kelley next contends the court erred in giving Final Instruction No. 13 concerning probable cause. According to Kelley this instruction applies in the case of a warrantless arrest and cannot apply in a situation where an officer makes an arrest with the forethought required in the preparation and approval of a warrant. However, the test for liability for false arrest under § 1983 is the same whether the arrest is conducted with or without a warrant. In each instance the relevant inquiry is whether the police officer reasonably believed that there was probable cause for the arrest. *Briggs v. Malley,* 748 F.2d 715 (1st Cir.1984), *aff'd* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Lenard v. Argento,* 699 F.2d 874, 884 (7th Cir. 1983), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84, quoting *Brubaker v. King,* 505 F.2d 534, 536–37 (7th Cir.1974). The probable cause instruction in this case was therefore appropriate.

 Kelley raises a similar challenge to Final Instruction No. 14 which advises that the test for liability as to the alleged false arrest and detention is not whether the arrest or detention was constitutional or unconstitutional or whether it was made with or without probable cause but "rather the test is whether any police officer should have reasonably believed that his affidavit failed to establish probable cause." *Record* at 294. According to Kelley this instruction allows the jury to consider an officer's split-second decisions as would be appropriate in the case of a warrantless arrest. We disagree. The plain wording of Final Instruction No. 14 indicates that it applies in the case of an arrest pursuant to a warrant. We find no error here.

## II.

Kelley next contends the trial court erred in refusing several of his tendered instructions. According to Kelley the instructions were necessary in order to provide the jury with the applicable law and to present his theory of the case. Specifically, Kelley claims error in the refusal of his Proposed Instruction Nos. 7 and 15 concerning the elements of his cause of action, Proposed Instruction No. 8 describing acts under "color of law" for purposes of § 1983, Proposed Instruction No. 17 regarding the intent required for imposition of liability under § 1983, Proposed Instruction Nos. 23 and 24 regarding proximate cause, Proposed Instruction No. 25 on the issue of damages, Proposed Instruction No. 27 regarding consent, and Proposed Instruction No. 28 which read that the mere fact that a prosecutor approved an affidavit and a judge approved a warrant does not protect an officer from liability if the affidavit contains false or misleading statements or omissions that were knowingly or recklessly made by the officer.

 Our standard for deciding whether the trial court erred in failing to give a requested instruction is well known. We determine 1) whether the tendered instruction correctly states the law, 2) whether the evidence at trial supports the giving of the instruction, and 3) whether the substance of the tendered instruction is covered by other instructions given. *Peak v. Campbell,* 578 N.E.2d 360, 361 (Ind.1991). We will reverse the court's refusal of a tendered instruction only upon an abuse of discretion. *Koziol v. Vojvoda,* 662 N.E.2d 985 (Ind.Ct.App.1996).

■ Here each of the instructions proposed by Kelley, except Proposed Instruction No. 8 regarding "color of law," was covered by other instructions. The court's Final Instruction Nos. 9, 10 and 18 gave a comprehensive description of the claims asserted by Kelley along with the applicable statutory and constitutional provisions. Final Instruction No. 22 described the intent required to establish a violation under § 1983. Final Instruction No. 33 instructed the jury regarding proximate causation as did Final Instruction No. 34 which is a verbatim recitation of Kelley's Proposed Instruction No. 24. Final Instruction Nos. 24 through 30 advised the jury that damages are recoverable in the case of a violation under § 1983. Final Instruction No. 20 properly advised on the issue of consent. And Final Instruction No. 11 gave the advisement contained in Kelley's Proposed Instruction No. 28. Kelley's Proposed Instruction No. 8 defining "color of law" was not covered by the court's instructions. However, this element of Kelley's § 1983 action was conceded by Watson and the court so advised the jury in Final Instruction Nos. 10 and 18. The trial court's instructions adequately covered the issues presented by Kelley and thus the court's refusal of the proposed instructions did not constitute an abuse of discretion.

### III.

Kelley next claims the trial court erred in admitting testimony of Watson's subjective state of mind at the time he entered Kelley's home on December 14, 1990 and by refusing to admit evidence of the objective, reasonably-well trained officer standard. According to Kelley the court erroneously admitted Watson's testimony that he had a great deal of concern the day he entered the Kelley residence because the individual for whom he held an arrest warrant had been charged with a serious offense, and that he believed that Kelley's son, Chad, had authority to give him consent to enter the home. On the other hand, Kelley claims the court erred in refusing to admit into evidence Plaintiff's Exhibits 23 and 24, Indianapolis Police Department General Orders governing the conduct of police officers in issuing and serving warrants and entering onto private property.

■ The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Faulkner v. Markkay of Indiana, Inc.,* 663 N.E.2d 798, 800 (Ind.Ct.App.1996), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Moreover, erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.*

■ Here, although evidence of Watson's state of mind when he entered the Kelley home was not of significance with respect to whether a constitutional violation occurred, its admission in this case did not amount to reversible error. First, Kelley failed to object to the testimony at trial and has therefore waived any error in its admission. *St. Anthony Medical Center, Inc. v. Smith,* 592 N.E.2d 732, 737 (Ind.Ct.App. 1992), *trans. denied.* Furthermore even absent waiver we cannot conclude that these two isolated portions of testimony were so prejudicial that their admission was against the logic and effect of the facts and circumstances before the court. As for the court's refusal to admit Plaintiff's Exhibits 23 and 24, the trial court properly determined that these items were not relevant to the issues at hand. They merely tend to establish whether Watson's conduct conformed to IPD procedures and not necessarily whether his actions were unreasonable by constitutional standards. Thus the trial court did not abuse its discretion in excluding the items from evidence.

■ Kelley also claims the trial court erred in admitting evidence of Watson's state of mind during his preparation of the warrant affidavit. However we observe that the theory presented by Kelley with respect to the arrest warrant was that Watson prepared an affidavit containing statements he knew to be false or would have known were false had he not recklessly disregarded the truth. By so doing Kelley placed Watson's state of mind directly at issue. *See United*

*States v. McNeese,* 901 F.2d 585 (7th Cir. 1990) (In order to prove deliberate falsehood or reckless disregard for the truth in a warrant affidavit, an arrestee must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts.) Because Watson's state of mind in preparing the warrant affidavit was a fact at issue in the case, evidence of that fact was properly admitted.

### IV.

Kelley next complains of several items not produced during discovery, namely an audiotape of Jamie Kirk's statement to police, a tape and transcript of an interview between Kelley and IPD officers, and an IPD computer file on Kirk's assailant, Chad Ramsey. Although Kelley phrases his argument in terms of the trial court's erroneous admission of testimony concerning these items, his primary concern appears to be the failure of the defense to produce these items and Kelley's resultant inability to present evidence helpful to his case.

■ Our courts have often stated that appropriate sanctions for failure to comply with a trial court's order concerning discovery is a matter committed to the sound discretion of the trial court. Ind.Trial Rule 37; *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993); *Patel v. State,* 533 N.E.2d 580, 585 (Ind.1989). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. *McCullough,* 605 N.E.2d at 180.

The record reveals that Kelley was aware of the existence of the Jamie Kirk audiotape prior to trial. The transcript of the interview was admitted as a plaintiff's exhibit. Likewise, Kelley should have been aware of the tape and transcript of his own interview with police. Kelley does not claim nor does the record reveal that he was unaware of the Chad Ramsey computer file. Nevertheless despite his apparent knowledge of the existence of these items Kelley took no action in order to compel their production. *See* T.R. 37. Because Kelley failed to request sanctions or other relief from the trial court in connection with the alleged discovery violation, he has presented nothing for our review. Kelley's further contention that the trial court erred in failing to issue a jury instruction calling for an adverse inference to be drawn from the failure to produce these items is likewise unavailing as Kelley failed to request such an instruction.

Judgment affirmed.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.