**Phillip ADKINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–9803–CR–135.

Court of Appeals of Indiana.

Dec. 22, 1998.

Mark Small, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi Froug, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

HOFFMAN, Senior Judge.

Appellant-defendant Phillip Adkins appeals from his convictions for robbery, a Class B felony, and criminal confinement, a Class B felony. The facts most favorable to the judgment are as follows:

On the morning of January 25, 1997, Jackie Bullard, the manager of a Wendy's restaurant, and five other employees were working at the restaurant to prepare it for opening. The defendant, holding a .38 caliber gun, entered the restaurant through the unlocked back door. He pointed the gun at the employees and made them crawl into the restaurant office. At some point during the robbery the defendant fired a shot into the restaurant's ceiling; he also threatened to shoot two employees in the head if they did not cooperate.

The defendant told Ms. Bullard to open the safe, which she informed him she could not do because of its time lock. She could open only the part of the safe containing coins. So upon the defendant's order she handed him a nearby white plastic money bag and filled it with the rolls of coins from the safe. During this encounter, Ms. Bullard had time to observe that the defendant was wearing black sweatpants and a sweatshirt, gloves, Nike shoes with red accents on them, and a black ski mask that exposed his eyes.

After ordering all of the employees to crawl into the rear office, the defendant backed out the door. Ms. Bullard immediately dialed 911 and reported the incident.

The defendant was apprehended a short time later. Police officers recovered a handgun from his person, a pair of gloves and a black ski mask from his car, and a white plastic money bag containing rolled coins totaling $243.10, almost exactly the amount that was missing from the restaurant. Forty minutes after the crime occurred, Bullard was taken by police officers to where the arresting officers were holding the defendant. Bullard unequivocally identified him by his eyes and shoes as the robber. At trial, all of the store's employees also identified the defendant's shoes as the ones the robber had worn. A jury convicted the defendant of Robbery and Criminal Confinement, both Class B felonies. The trial court sentenced the defendant to two consecutive twenty-year terms at the Department of Correction, finding no statutory mitigating factors, and citing as aggravating factors, "a history of criminal delinquent activity ... there have been four prior adult arrests, two of which were for robberies, one conviction which was an A-misdemeanor, all the rest included, except for one included handgun violation alleged," "a need for correctional rehabilitative treatment that can best be provided by commitment to a penal facility," and "that the imposition of a reduced sentence would depreciate the seriousness of the crime." (R. 381).

On appeal, the defendant raises four (4) issues:

(1) whether the trial court abused its discretion by admitting Ms. Bullard's identification of the defendant;

(2) whether the trial court abused its discretion by admitting into evidence a handgun proffered by the State, over the defendant's objection alleging a defective chain of custody;

(3) whether the jury's verdicts are contradictory, and thus defective; and

(4) whether the trial court abused its discretion in sentencing the defendant to two (2) consecutive twenty-year terms.

(1) The defendant first argues that the one-on-one identification procedure used by the arresting officers approximately forty minutes after the robbery was impermissibly suggestive, and thus both Ms. Bullard's pre-trial identification of the defendant as the robber, as well as her identification of him in court, should have been suppressed during the trial. When Ms. Bullard was taken to the site where, the officers informed her, they "thought they maybe" had a suspect, the defendant was the only individual present who was not a police officer. Because he was the only suspect present, he was in handcuffs, and next to a police car, defendant maintains, the identification procedure was impermissibly suggestive.

█ The defendant concedes a pretrial confrontation occurring immediately after the commission of the crime is not *per se* unduly suggestive even though the accused is the only suspect present. *Cook v. State*, 403 N.E.2d 860, 864 (Ind.Ct.App.1980), *trans. denied.* A one-on-one, or "show-up" confrontation is proper when reliable under the totality of the circumstances, including (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Stroud v. State*, 587 N.E.2d 1335, 1338–39 (Ind.Ct.App.1992), *trans. denied.* The courts have found "the value of the witness' observations ... while the image of the offender is fresh in his mind" to overcome the inherently suggestive nature of the circumstances. *Lewis v. State*, 554 N.E.2d 1133, 1135 (Ind.1990), *reh'g denied.* Finally, even if a show-up identification were to be found "unnecessarily suggestive," that alone would not require exclusion of the evidence. *Stroud*, 587 N.E.2d at 1338–39.

█ Ms. Bullard had ample time to view the defendant at the time of the crime. She identified with specificity the clothes, shoes, gloves and ski mask he was wearing, as well as having seen his eyes as she was forced at gunpoint to put the coins into the money bag. She accurately described these attributes and her description matched that of the defendant. She unequivocally identified the defendant as the robber, merely forty minutes after he committed the crime.

The police did not use unduly suggestive procedures, only informing Ms. Bullard that they "thought they maybe" had a suspect. Nothing in the record suggests that any individual told Ms. Bullard to identify defendant as the robber.

█ In addition to challenging the one-on-one procedure, defendant raises the issue of whether the trial court abused its discretion in refusing to suppress Ms. Bullard's in-court identification of the defendant. The record reflects that defendant did not object to the identification at trial, so it is clearly not preserved for appeal. Furthermore, it is well settled that where a witness had an opportunity to observe the perpetrator during the crime, a basis for in-court identification exists, independent of the propriety of pre-trial identification. *See Brown v. State*, 577 N.E.2d 221, 225 (Ind.1991), *reh'g denied*, 583 N.E.2d 125 (Ind.1991), *cert. denied* 506 U.S. 1015, 113 S.Ct. 639, 121 L.Ed.2d 569 (1992); *Wethington v. State*, 560 N.E.2d 496, 502–03 (Ind.1990). As Ms. Bullard's in-court identification of the defendant had such an independent basis, it was neither abuse of discretion nor fundamental error for the trial court not to suppress it.

(2) Defendant next contends that the trial court abused its discretion by admitting into evidence a handgun proffered by the State, over the defendant's objection alleging a defective chain of custody. Although Ms. Bullard testified that the gun was the same one the defendant had used in the robbery, and an officer from the crime lab testified at trial that the gun was the same one taken from

the trunk of the officer who took possession of the gun from the defendant, the alleged defect arises from the fact that the officer who took possession of the gun could not definitively identify the gun in court.

■ The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Kelley v. Watson*, 677 N.E.2d 1053, 1059 (Ind.App.1997). We will reverse a trial court's decision only for an abuse of discretion, that is, only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Furthermore, the fact that evidence only inconclusively connects the defendant to a crime affects the weight to be accorded that evidence by the fact-finder, rather than affecting its admissibility. *Hunter v. State*, 578 N.E.2d 353, 357 (Ind.1991), *reh'g denied; see also, Johnson v. Indiana*, 272 Ind. 547, 400 N.E.2d 132, 133 (1980) ("That the connection with the crime is inconclusive affects the weight of the evidence but does not render it inadmissible.").

■ In spite of one officer's inability to identify the gun as that of which he took possession at the scene, the defendant has failed to establish a defect in the chain of custody sufficient to render the gun's admission clearly erroneous. The officer testified that he took the weapon from the defendant and immediately secured it in his trunk until turning it over to the crime lab. The crime lab technician identified that gun by its serial number and testified that its condition from the property room until trial was unchanged. We find no error or abuse of discretion in the trial court's admission of the gun.

■ (3) Defendant's third contention, that the jury's verdicts are defective for being contradictory, appears to be grounded in a claim that insufficient evidence supports the verdict. As such, it is tantamount to a request of this court that it substitute its judgment for that of the jury. We decline to do so. "When the sufficiency of the evidence is challenged, we consider only the probative evidence and reasonable inferences therefrom which support the verdict, without reweighing the evidence or assessing credibility, to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt." *Moore v. State*, 515 N.E.2d 1099, 1101 (Ind.1987). Defendant argues that the jury's verdicts are contradictory because of the several employees present at the crime, only one witness, Ms. Bullard, identified the defendant as the robber. "Identification by a single witness is sufficient to sustain a conviction for robbery." *Id.* The trier of fact determined that Ms. Bullard's identification of the defendant was credible. All of the additional witness testimony, as well as the physical evidence, led the jury to conclude that defendant committed the robbery and confinement. We affirm the defendant's convictions.

(4) Finally, defendant appeals on four grounds the trial court's imposition of two consecutive twenty-year sentences. He argues, first, that the trial court inappropriately considered his history of criminal activity as an aggravating circumstance; second, that the trial court abused its discretion by employing the aggravator "need for rehabilitative treatment in a penal facility" to enhance the presumptive sentence for each conviction; third, that it was abuse of discretion for the trial court to find as an aggravating circumstance that the presumptive sentence would "depreciate the seriousness of the crime"; and, finally, that the sentence is "manifestly unreasonable."

I.C. 35-38-1-3 provides that, when sentencing a person for a felony, the trial court "must conduct a hearing . . . ." and "make a record of the hearing, including: . . . a statement of the court's reasons for selecting the sentence that it imposes." At the sentencing hearing in this matter, the trial court identified three (3) aggravating factors considered in determining the sentence to be imposed: "a history of criminal delinquent activity . . . there have been four prior adult arrests, two of which were for robberies, one conviction which was an A-misdemeanor, all the rest included, except for one included handgun violation alleged," "a need for correctional rehabilitative treatment that can best be provided by commitment to a penal facility," and "that the imposition of a reduced sentence

would depreciate the seriousness of the crime." (R. 381).

The defendant argues that the sentencing court inappropriately applied his history of criminal activity. The court found, "that there is no juvenile history, however, there have been four prior adult arrests, two of which were for robberies, one conviction, which was an A misdemeanor, all the rest included, except for one included handgun violations alleged."

■ It is within the discretion of the trial court to determine whether a presumptive sentence will be increased because of aggravating circumstances. *Isaacs v. State,* 673 N.E.2d 757, 765 (Ind.1996); *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995). The defendant correctly asserts that "a record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of prior criminal history." *Tunstill v. State,* 568 N.E.2d 539, 544 (Ind.1991). However, our supreme court has held more recently that "such information may be relevant to the trial court's assessment of the defendant's character in terms of risk that he will commit another crime." *Ealy v. State,* 685 N.E.2d 1047, 1058 (Ind. 1997). The court has also held that "prior arrests and pending charges not reduced to convictions are properly considered as reflective of defendant's character and indicative of risk of future crime." *Beason v. State* 690 N.E.2d 277, 281 (Ind.1998)

■ In the most recent case addressing the propriety of considering an arrest or arrest record as an aggravating circumstance, the supreme court held a trial court to have "appropriately considered and weighed defendant's prior criminal activity in enhancing [a] presumptive sentence." *Taylor v. State,* 695 N.E.2d 117, 121 (Ind.1998) (citing *Tunstill,* 568 N.E.2d 539, 545 (Ind. 1991)). An enhanced sentence may be imposed when the only aggravating circumstance is the defendant's prior criminal history. *Isaacs,* 673 N.E.2d at 765; *Pruitt v.*

*State,* 622 N.E.2d 469, 474 (Ind.1993), *reh'g denied.* Furthermore, "[a] trial court may evaluate 'any other factor which reflects on the defendant's character, good or bad' when determining the appropriate sentence to impose." *Taylor,* 695 N.E.2d at 121.

■ The single A-misdemeanor conviction is sufficient to support the sentence enhancement before us. The trial court properly applied the defendant's criminal history, and we will not undertake to reweigh historical factors that were within the court's discretion to consider.

■ The defendant next challenges the trial court's mere recitation of the statutory factor "need for rehabilitative treatment." It is well settled that "[a] 'perfunctory recitation' of statutory factors does not provide adequate review of the appropriateness of an enhanced sentence." *Battles v. State,* 688 N.E.2d 1230, 1236 (Ind.1997); *Hollins v. State,* 679 N.E.2d 1305, 1308 (Ind. 1997); *Smith v. State,* 675 N.E.2d 693, 697–98 (Ind.1996), *remanded for new sentence determination, aff'd,* 695 N.E.2d 909 (Ind. 1998); *Mayberry v. State,* 670 N.E.2d 1262, 1270–71 (Ind.1996). "When relying on this particular aggravator to support an enhanced sentence, the trial court must provide a specific statement of why the particular defendant needs corrective or rehabilitative treatment that could best be provided by a penal facility—for a period of time in excess of the presumptive sentence." *Battles,* 688 N.E.2d at 1236. The *Battles* court found the misapplication of this aggravator to be harmless error given the defendant's lengthy criminal history. *Id.*

■ In the case at hand, such a "fallback" to an alternate aggravator to bolster the sentence is not as simple.[1] While we are not prepared to vacate the sentences based upon the trial court's misapplication of this aggravating circumstance, the weight of authority clearly mandates that if a sentencing judge chooses to rely upon the aggravator, "need for rehabilitative treatment in a penal facility" in order to enhance the presumptive

---

1. See the discussion of the misapplication of the "depreciate the seriousness of the crime" aggra-   vator, *infra.*

sentence, he *must* do more than recite the statutory language during the sentencing hearing. He must specifically state why this defendant, given the facts and circumstances in this case, needs such treatment in such a facility for longer than the presumptive sentence would allow. "For this aggravating circumstance to justify in part an enhanced sentence, it must be understood to mean that the defendant is in need of correctional and rehabilitative treatment that can best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term." *Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind.1996). *Accord Beason,* 690 N.E.2d at 281–82; *Battles,* 688 N.E.2d at 1236; *Hollins,* 679 N.E.2d at 1308; *Mitchem v. State,* 685 N.E.2d 671, 679 (Ind.1997); *Smith,* 675 N.E.2d at 697–98; *Newhart v. State,* 669 N.E.2d 953, 955 (Ind.1996). The sentencing court failed to articulate the court's consideration of the facts of the specific crimes or the characteristics of the particular defendant as they relate to the need for rehabilitative treatment to endure throughout two consecutive sentences of twice the statutorily presumptive length. We conclude therefore that this aggravating circumstance was improperly applied, and remand with instructions to enter a specific and individualized statement to support consecutive sentences, to impose concurrent sentences, or to reduce them to the presumptive length.

■ Defendant's next contention, that the trial court abused its discretion by citing as an aggravating circumstance that "the imposition of a reduced sentence would depreciate the seriousness of the crime," is correct. A trial court may consider that the imposition of a reduced sentence might reduce the seriousness of the crime. I.C. § 35–38–1–7.1(b)(4). However, the appellate courts have consistently held that a trial court may apply this factor only when the court considers imposing a shorter sentence. *Mitchem,* 685 N.E.2d at 679; *Bacher v. State,* 686 N.E.2d 791, 801 (Ind.1997); *Jones v. State,* 675 N.E.2d 1084, 1088 (Ind.1996); *Mayberry,* 670 N.E.2d at 1270; *Widener,* 659 N.E.2d at 533; *Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994), *reh'g denied.* The record does not reflect that the court considered reducing the presumptive sentence recom-

mended by the State. We find that the use of this aggravating factor was improper.

As for defendant's final contention, we have already noted that when reviewing a sentence authorized by statute, this court will not revise it "except where such sentence is manifestly unreasonable in light of the offense and the character of the offender." Ind. Appellate Rule 17(B)(1).

■ I.C. 35–50–2–5 provides that "[a] person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances...." This defendant was convicted of two Class B felonies, robbery and confinement. For each of these B felonies, a sentence of twenty years is authorized by statute upon a finding of aggravating circumstances. Sentencing decisions rest within the sound discretion of the trial court. *Trei v. State,* 658 N.E.2d 131, 134 (Ind.Ct.App.1995). It is within the discretion of the trial court to determine whether sentences are to be served concurrently or consecutively. *Anderson v. State,* 448 N.E.2d 1180, 1186 (Ind.1983).

■ Although we have determined that two of the three aggravating factors were inappropriately applied by the trial court, the court did appropriately consider the defendant's criminal history. A sentencing court is not precluded from relying on the same aggravating circumstance both to enhance a sentence and to order it served consecutively. *Blanche v. State,* 690 N.E.2d 709, 716 (Ind.1998). Because the trial court properly applied one aggravating factor, and the sentences are within the statutory limits for the B felonies of Robbery and Confinement, there was no abuse of the trial court's discretion, and we decline to find the sentences manifestly unreasonable.

In conclusion, we affirm defendant's convictions for Robbery, a Class B Felony, and Confinement, a Class B Felony. We remand to the trial court only on the issue of the inappropriate application of the aggravating circumstance, "need for rehabilitation in a penal facility," with instructions to enter a specific and individualized statement to sup-

port consecutive sentences, to impose concurrent sentences, or to reduce them to the presumptive length.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur as to Parts (1), (2), and (3). As to Part (4), concerning the sentences imposed, I dissent.

I agree that the prior Class A misdemeanor conviction does, in itself, constitute proof of prior criminal activity. I do not, however, agree with the implication that the mere fact of an arrest demonstrates that the defendant is likely to commit crimes in the future. Moreover, the cases cited by the majority do not support such a proposition.

As noted in *Tunstill v. State* (1991) Ind., 568 N.E.2d 539, 544 and as quoted by the majority here:

> "A record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of prior criminal activity."

That principle is not diminished by *Ealy v. State* (1997) Ind., 685 N.E.2d 1047, or *Beason v. State* (1998) Ind., 690 N.E.2d 277. In *Ealy*, the defendant had been convicted of three prior crimes, two of which involved firearms. The first of these convictions was the carrying of a handgun without a license. Secondly, the defendant was convicted of disorderly conduct for attempting to grab a police officer's gun from its holster. These two convictions, a misdemeanor conviction for possession of cocaine, along with a finding that the defendant had a tendency to resort to violence were used as aggravators in sentencing. Thus in *Ealy*, unlike in this case, the fact of prior criminal conduct had been established.

In *Beason*, the court correctly stated that "[a]llegations of prior criminal activity need not be reduced to conviction," but it did not

state that the fact of the prior criminal activity may be inferred from the mere arrest itself. Rather, by citing to *Tunstill*, the court in *Beason*, strongly implied to the contrary. The same effect is *Taylor v. State* (1998) Ind., 695 N.E.2d 117 which also cites to *Tunstill*, and *Beason*.

In essence then, I find it incompatible with the holding of *Tunstill*, to conclude that a mere prior arrest, without some evidence that criminal activity was, in fact, involved, reflects adversely upon a defendant's character and permits an inference that he is likely to commit crimes in the future.

As earlier noted, the prior misdemeanor conviction constitutes prior criminal activity. However, that single conviction does not, in my view, justify enhancement of both sentences for the two Class B felony convictions from the presumptive ten years to the maximum twenty years and to make those sentences consecutive.

I concur in the majority's determination that the trial court improperly used "the need for rehabilitative treatment" as an aggravating factor, but I disagree with the remand in order to permit the trial court to belatedly enunciate a consideration which may or may not have been present at the time of the sentencing.

I also agree that the trial court misapplied the principle that a particular sentence might "depreciate the seriousness of the crime." In concurring, however, I would note that our Supreme Court has, in several past cases applied the principle to situations in which the trial court has specifically stated that to impose a presumptive sentence rather than the specific enhanced sentence imposed would be to "depreciate the seriousness of the crime." *Ector v. State* (1994) Ind., 639 N.E.2d 1014; *Evans v. State* (1986) Ind., 497 N.E.2d 919. Of course, the trial court here did not so state.

The end result of our consideration of the sentencing errors leaves a single justification for the cumulative forty year sentence. That is a single conviction for a Class A misdemeanor. In this light, I would reverse [2] and

---

2. Recently, in *Buchanan v. State* (1998) Ind., 699     N.E.2d 655, our Supreme Court held that *two*

remand with instructions to impose the presumptive sentence for each conviction and to order the sentences to be served concurrently.

aggravators did not warrant imposition of both the maximum enhanced sentences for two offenses and an order that they be served consecutively. It seems clear, therefore, that a single aggravating factor should not be used to do what two aggravators could not do in *Buchanan*. *See Walton v. State* (1995) Ind., 650 N.E.2d 1134; *Staton v. State* (1994) Ind.App., 640 N.E.2d 741.