# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender

**JOHN A. ENGLAND**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 30 2014, 10:00 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICAH D. PERRYMAN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1308-PC-299 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable David T. Ready, Judge
Cause No. 20C01-0802-PC-3

**July 30, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Micah D. Perryman appeals the post-conviction court's denial of his petition for post-conviction relief. Perryman raises two issues which we consolidate and restate as whether the court erred in denying his petition for post-conviction relief. We affirm.

FACTS AND PROCEDURAL HISTORY

Between approximately 8:00 p.m. and 10:00 p.m. on May 4, 2003, Elkhart City Police Corporal Brian Schroth supervised a controlled drug buy from a residence at 210 W. Washington Street in Elkhart, which was a property rented by Perryman. Corporal Schroth searched the confidential informant ("C.I.") and gave him twenty dollars. Corporal Schroth, Corporal Dave Baskins, and the C.I. arrived at the residence, the C.I. entered the residence, and Perryman and Michelle Weekly were present inside. Perryman asked the C.I. what he wanted, and the C.I. said that he wanted "20," which indicated that he wanted crack cocaine worth twenty dollars. 2006 Transcript at 273. Weekly then went to the bedroom and retrieved a bag, handed the bag to Perryman, and Perryman handed crack cocaine to the C.I. The C.I. was in the residence for approximately one to two minutes, exited the residence, and went straight to the vehicle containing Corporal Schroth and handed the crack cocaine to him.

As a result of the information and items gathered, the police obtained a search warrant. At approximately 10:00 p.m. on May 5, 2003, the police executed the search warrant. Perryman, Brandy Bowen, and Weekly were present during the execution of the warrant. The police discovered two bags containing individually wrapped rocks of crack cocaine in an air duct. One of the baggies had thirty-five individually wrapped rocks of crack

2

cocaine. The police found approximately sixteen grams of crack cocaine, twenty grams of marijuana, and a marijuana blunt cigar containing approximately 1.7 grams of marijuana. On May 9, 2003, the State charged Perryman with: Count I, possession of cocaine in excess of three grams as a class A felony; Count II, dealing in cocaine as a class B felony; Count III, maintaining a common nuisance as a class D felony; and Count IV, possession of marijuana as a class A misdemeanor. On January 12, 2004, Perryman's counsel filed a motion to suppress all items seized by law enforcement officials and any communications made by Perryman with law enforcement officers. Perryman's counsel argued that the affidavit for the search warrant was largely dependent upon the unreliable information provided by the C.I. and was not supported by probable cause.

On February 27, 2004, the State filed a Notice of Intent to Offer I.R.E. 404(b) Evidence which stated: "It is anticipated that as part of his defense, [Perryman] will argue or present evidence that the cocaine was possessed, not with the intent to deliver, but for his personal use." Petitioner's Exhibit 5. The State asserted that it was permitted to offer evidence relating to the controlled buy of cocaine and the subsequent search under Evidence Rule 404(b) to show proof of motive, intent, or absence of mistake or accident. Perryman's counsel objected and made an oral motion in limine, which the court overruled.

Prior to the beginning of trial, the State moved to dismiss Counts II and III, and the court granted the motion. A jury found Perryman guilty of possession of cocaine and marijuana. Perryman v. State, 830 N.E.2d 1005, 1007 (Ind. Ct. App. 2005). At sentencing, the trial court found Perryman's criminal history, his status as a probationer at the time of the

offense, and the amount of drugs found in the residence as aggravating circumstances. Id. The court declined to place any weight on the mitigating circumstances suggested by Perryman, imposed a sentence of fifty years on the class A felony and one year on the class A misdemeanor, and ordered the sentences to be served concurrent with each other. Id.

On direct appeal, this court reversed based upon improper *voir dire*. Id. at 1011. On March 21, 2006, prior to the start of his second trial and through new counsel, Perryman filed a Motion to Suppress or in the Alternative Motion to Reconsider and argued that the information provided by Corporal Schroth did not come from first-hand knowledge that a crime had been committed, that Corporal Schroth did not personally observe any illegal activity inside the residence, that the information came solely from the observations related by the C.I. to the officers, and that the evidence obtained as a result of the illegally issued search warrant should be suppressed and excluded from evidence at the trial. On March 23, 2006, the trial court held a hearing on the renewed Motion to Suppress, which it subsequently denied on March 27, 2006, the first day of Perryman's second jury trial. Perryman v. State, No. 20A03-0609-CR-408, slip op. at 4 (Ind. Ct. App. April 9, 2007), trans. denied. Meanwhile, an entry dated March 23, 2006, in the chronological case summary indicates that the State still intended to offer information consistent with the 404(b) motion filed in the first trial. On March 28, 2006, Perryman was again found guilty of possession of cocaine in excess of three grams with the intent to deliver and possession of marijuana. Id. On May 18, 2006, the court sentenced Perryman to fifty years in the Department of Correction on the

4

possession of cocaine conviction and to a one-year concurrent sentence on the possession of marijuana conviction. Id.

On appeal, Perryman argued that the trial court improperly denied his motion to suppress evidence. Id. at 4. Specifically, Perryman asserted that the evidence seized from his residence was obtained in violation of Ind. Code § 35-33-5-2(b) and that the search warrant was based upon hearsay. Id. The court found that Perryman did not object at trial to the admission of evidence obtained as a result of the warrant and held that, waiver notwithstanding, Perryman's hearsay argument failed on its own accord. Id. at 5-6. Specifically, the court held:

> We have previously held that an affidavit based on the statements of officers engaged in the investigation and shown to be based upon their actual knowledge, is not deficient, despite its hearsay character. Redden[ v. State, 850 N.E.2d 451, 461 (Ind. Ct. App. 2006), trans. denied]. Our review of the affidavit in this case shows great detail as to the circumstances of the controlled drug buy performed at Perryman's residence, culminating the knowledge of the C.I. and at least three police officers. Therefore, we can find no error in the trial court's decision to admit the evidence obtained as a result of this affidavit.

Id.

Perryman also argued that the State failed to present sufficient evidence that he possessed cocaine in excess of three grams with the intent to deliver in that he was not in actual possession of more than three grams of cocaine because a majority of the drugs found in his residence were in an air duct, not on his person. Id. at 6. This court held:

> [W]e conclude that the record contains more than sufficient evidence that Perryman had constructive possession of the crack cocaine recovered from a vent in his basement during the execution of the search warrant. Even though his possession of the cocaine may not have been exclusive at all times, as the

C.I. encountered both Perryman and his girlfriend, Weekly, during the controlled drug buy, the record clearly supports Perryman's knowledge of the contraband. At trial, the C.I. testified that during the controlled buy, he witnessed Weekly retrieve a large bag of cocaine rocks and then hand the bag to Perryman. Thereafter, the C.I. testified that he observed Perryman extract a $20.00 rock from the bag before directly giving it to him. Thus, there is no question that Perryman exercised control over this amount of crack cocaine. In addition, however, the record shows that following the controlled drug buy and issuance of the search warrant, police officers found nearly twelve grams of crack cocaine in a vent in Perryman's basement. Although not on his person, this crack cocaine was located in a house that Perryman paid rent on, and was separated into thirty-five bags, like the $20.00 bag sold to the C.I. Consequently, despite the fact that Perryman was not caught physically holding more than three grams of cocaine, we conclude that a trier of fact could easily infer that Perryman had knowledge of the presence of the crack cocaine throughout his residence. Accordingly, we hold that the State presented sufficient evidence to convict Perryman of possession of cocaine in excess of three grams with the intent to deliver.

Id. at 7-8.

On August 26, 2008, Perryman filed a motion to reconstruct the record. On September 10, 2009, the court held a hearing on Perryman's motion. At the hearing, Perryman questioned the prosecutor in his 2006 trial regarding multiple sidebar conferences that did not appear in the transcript of the trial, and the prosecutor indicated that he did not recall the contents of the sidebar discussions. On December 7, 2009, the court entered an order stating that Perryman failed to provide any evidence or establish how the record may be supplemented and deemed the record complete in contemplation of Perryman's petition for post-conviction relief.

On June 24, 2010, Perryman filed a petition for post-conviction relief. On October 3, 2011, Perryman filed an amendment to his petition for post-conviction relief. In his petition and the amendment, Perryman alleged that he received ineffective assistance of trial counsel

6

because counsel failed to argue that the controlled buy lacked proper controls, failed to argue that the evidence of the controlled buy was outside of the scope of the evidence outlined in the State's Notice of Intent, failed to file a limiting jury instruction on how the jury should use the evidence of the controlled buy, failed to investigate and present evidence regarding special consideration given to Weekly, and failed to interview Bowen and call her as a witness. Perryman also alleged that the trial court's recording system was of poor quality and routinely would not pick up discussions.

On December 6, 2012, the court held a hearing on Perryman's petition. The judge for Perryman's prior trials, Judge George W. Biddlecome, and the court reporter, testified regarding the recording system. Perryman's trial counsel, the prosecutor, Perryman, and Weekly also testified. Bowen testified that she was arrested with Perryman and Weekly on May 5, 2003, arrived at Perryman's house that morning, and hung out with Weekly. Bowen testified that a man she knew as Twin arrived in the early afternoon and gave some baggies containing marijuana to Weekly and that Weekly took the baggies into another room when Perryman was not home. Bowen also testified that Perryman came home around 8:30 or 9:00 p.m., that she was never interviewed by Perryman's trial counsel, and that she would have testified at the trial. On cross-examination, Bowen admitted that she had been convicted of home invasion and that she did not know if Perryman had contacted Twin earlier and asked him to bring drugs to his residence.

On July 19, 2013, the court entered an order denying Perryman's petition for post-conviction relief and indicating that an additional order would set forth certain findings in support of the court's decision. On August 14, 2013, the court entered an order which states:

> As regards the recording system issue, the Court finds that Perryman's appellate counsel . . . adequately represented Perryman on appeal without raising the lack of adequate recording as an issue. Perryman now contends that his appeal rights were hampered by the deficiencies of the recording system but fails to demonstrate how it was so hampered. If, in fact, his appeal was hampered, his [appellate] counsel . . . could have so testified before this Post-Conviction Court hearing. In absence of such testimonial evidence, this Court cannot assume that Perryman was denied his right to a meaningful appeal.
>
> As regards Perryman's allegations of ineffective assistance of counsel, he makes a number of such allegation [sic] which the Court summarizes as follows:
>
> - Failure to challenge witness Michelle Weekly regarding her sentence modification.
> - Failure to interview Brandy Bowen and to call her as a witness.
> - Fail[ure] to challenge certain 404(b) evidence submitted by the State.
> - Failure to challenge the admissibility of evidence seized by way of search warrant.
>
> As to Michelle Weekly, the allegation rests upon a supposition that there was an "undisclosed deal" between the State and Weekly to grant her a sentence modification in return for her testimony against Perryman. As evidence [sic] in the Post-Conviction hearing there is no evidence to support this contention. In absence of such evidence [trial counsel] cannot be criticized for failing to suggest that such evidence exists. The record here suggests that [trial counsel] did adequately cross-examine Weekly on a number of fronts. Additionally, Michael Banik, the Deputy Prosecutor in the Perryman trial testified in the Post-Conviction hearing that he did not promise Weekly anything for her testimony. In summary, since there is no evidence that some "deal" existed between the State and Michelle Weekly, the Court cannot find that [trial counsel's] failure to suggest otherwise by cross-examination prevent [sic] Perryman from getting a fair trial.

8

[Perryman] next contends that [trial counsel] was ineffective for failing to interview Brandy Bowen (now Brandy Bowen Murphy) as a potential witness and failing to call her to testify in the Perryman trial.

At the Post-Conviction hearing [trial counsel] stated that he had interviewed a female witness who allegedly had exculpatory information but decided not to call her as a witness. [Trial counsel] could not recall the name. Brandy Bowen denied meeting with [trial counsel]. Nevertheless, Brandy Bowen did testify at the Post-Conviction hearing which gave this Court the opportunity to assess her as a testifying witness. In determining whether the failure to call a particular witness constitutes malfeasance on the part of an attorney, the Court must take into consideration whether the witness has sufficient credibility so as to possibly influence the outcome of the trial. Having listened to and observed the witness Brandy Bowen Murphy, that [sic] she lacks that necessary element of credibility. It is the opinion of this Court that failure of [trial counsel] to call Brandy Bowen Murphy as a witness did not prevent Perryman from his right to fair trial because of Brandy Bowen's lack of credibility.

[Perryman] next alleges that [trial counsel] was ineffective for allowing the State to introduce evidence in its case-in-chief which exceeds the scope of I.R.E 404(b). Here this Court agrees with the State presented [sic] analysis of the Indiana Supreme Court case of Goodner v. State, 685 N.E.2d 1058 (Ind. 1997) to the effect that evidence of the prior buy was admissible to demonstrate a "plan". Further, it is noted that [trial counsel] testified that he made certain strategic decisions regarding that evidence which appeared to be reasonably based. Such decisions can be second-guessed but that does not overcome the presumption of competence of counsel.

Finally, Perryman contends that [trial counsel] rendered ineffective assistance of counsel by failing to challenge the affidavit which supported the search warrant and the evidence seized pursuant to that warrant.

It is sufficient to note that the search warrant was challenged and [sic] both the trial level and the appellate level. In both instances, the Courts found that the evidence supporting the warrant was sufficient. [Perryman] fails to convince this Court that additional or different approaches to challenge the search warrant would have resulted in different rulings by the trial or appellate courts.

There is presumption [sic] that counsel rendered competent counsel and exercised reasonable professional judgment in his representation. That

presumption must be overcome by strong and convincing evidence. This Court now finds that [Perryman] has failed to sustain that burden. The Court now restates its Order that the Petition for Post-Conviction Relief is denied.

Post-Conviction Appellant's Appendix at 311-314.

## DISCUSSION

Before discussing Perryman's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

Perryman argues: (A) his trial counsel was ineffective; and (B) recording deficiencies during his 2006 trial precluded the fair review of objections and bench discussions at his trial and on direct appeal.

A.    Ineffective Assistance

Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. French v. State, 778 N.E.2d 816, 824 (Ind. 2002) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), reh'g denied). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. Id. To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). "[L]ogic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Hilliard v. State, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting Strickland, 466 U.S. at 696, 104 S. Ct. at 2069)). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the

11

exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. Passwater v. State, 989 N.E.2d 766, 772 (Ind. 2013) (citing Wrinkles v. State, 749 N.E.2d 1179, 1192 (Ind. 2001)).

Perryman argues that his trial counsel at the second trial was ineffective for: (1) failing to argue for exclusion of the State's intended use of Ind. Evidence Rule 404(b) evidence of the controlled drug buy based upon the lack of controls used by the police; (2) failing to argue that the 404(b) evidence used by the State of the controlled buy was inadmissible because it was outside the scope of that evidence as outlined in the State's Notice of Intent to Use 404(b) Evidence of the controlled buy solely for rebuttal purposes; (3) failing to request an admonishment to the jury or tender a jury instruction on how the jury was to consider the

State's 404(b) evidence of the controlled buy; (4) failing to question Weekly about and impeach her testimony with the unexplained benefit the State had conferred upon Weekly just weeks prior to Perryman's trial; and (5) failing to interview Bowen and call her as a defense witness at trial.

      1.     Lack of Controls

Perryman argues that his trial counsel failed to argue in the motion to suppress and object at trial that all evidence from or pertaining to the search of his home should have been suppressed not only because of the unreliable information, hearsay, and misrepresentations contained in the affidavit for the search warrant, but also because the controls used in the controlled buy were flawed and did not provide sufficient probable cause for the issuance of the warrant or the admission of the evidence at trial from the subsequent illegal search. He contends that where proper police controls are lacking in a controlled buy, probable cause for a search warrant based upon the controlled buy is lacking, and evidence from the illegal search should be suppressed. Perryman asserts that the record indicates that if the two police officers were positioned and sitting in their car watching his back door as they said they were, then they could not have seen and observed the front door to his residence, which would have been required for an adequately controlled buy according to Flaherty v. State, 443 N.E.2d 340 (Ind. Ct. App. 1982). Perryman points to Corporal Baskins's testimony at a February 23, 2004 hearing for the idea that the C.I. was out of their sight for up to seven minutes. Perryman asserts that trial counsel did not, at any time, make the argument that the controls used in the alleged controlled buy were flawed and did not provide sufficient

13

probable cause for the issuance of the search warrant or the admission of evidence at trial from the subsequent illegal search of Perryman's residence. Perryman contends that he was prejudiced because it was the police allegation in the Affidavit for Search Warrant of an adequately conducted controlled buy that led the Court of Appeals in the second appeal to mistakenly find no error in the trial court's decision to admit the evidence obtained as a result of this affidavit.

The State argues that two trial courts as well as this court have determined that probable cause to issue the search warrant was established in this case and therefore Perryman's present attack on the probable cause for the search warrant is barred by the doctrine of the law of the case. The State asserts that even if his allegation was not barred under the doctrine of the law of the case, his claim fails because he failed to provide any evidence that the C.I.'s information provided in the probable cause affidavit that Perryman was the person who sold the cocaine is incorrect. In his reply brief, Perryman argues that his claim was never considered in a prior appeal and that the buy was not controlled as outlined in Flaherty.

To the extent the State argues that the law of the case doctrine applies, we observe that "[t]he doctrine of the law of the case is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts." Cutter v. State, 725 N.E.2d 401, 405 (Ind. 2000) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817-818, 108 S. Ct. 2166, 100 L.Ed.2d 811 (1988); State v. Lewis, 543 N.E.2d 1116, 1118 (Ind. 1989)), reh'g denied. "The purpose of this

doctrine is to promote finality and judicial economy." Id. "The doctrine of the law of the case is applied only 'to those issues actually considered and decided on appeal.'" Id. (quoting 4A Kenneth M. Stroud, Indiana Practice § 12.10 (2d ed. 1990) (emphasis omitted)).

In the second appeal, this court addressed Perryman's argument that the search warrant was based upon hearsay and that the evidence seized from his residence was obtained in violation of Ind. Code § 35-33-5-2(b). His argument in his petition for post-conviction relief is different in that he now argues that his trial counsel failed to challenge the admission of evidence on the basis that the controlled buy did not have the proper police controls. Even assuming that this issue is not governed by the law of the case, we cannot say that Perryman has demonstrated that his trial counsel was ineffective on this basis.

In Flaherty, the information in an affidavit revealed that a police officer observed an informant enter and exit the apartment building only, but not the individual apartment of the defendants. 443 N.E.2d at 341. The court found the absence of this information fatal to the efficacy of the affidavit. Id. Here, the affidavit provided a detailed description of the apartment and which door the C.I. entered. Specifically, the affidavit stated that the apartment was a downstairs apartment of a two floor, multi-family dwelling and that the downstairs apartment has two entrances, one facing the south and another facing the north. The affidavit also stated that the C.I. went to the north side door, that the C.I. did not stop and talk to anyone prior to the controlled buy, and that Corporal Schroth and Corporal Baskins observed the C.I. walk directly from the vehicle to the door, and that Weekly, who had previously told police that she resides at the downstairs apartment, opened the door and

15

allowed the C.I. to enter the apartment. The affidavit also states that the C.I. exited the apartment and walked directly back to the undercover vehicle after the controlled buy. Corporal Schroth testified at the February 23, 2004 hearing and the second trial that the C.I. was inside 210 Washington for approximately one to two minutes. Further, at the February 23, 2004 hearing, Corporal Baskins testified that he parked on the west side of the house and that he could see the back yard area, the complete west side, and part of the front.[1] We find Flaherty distinguishable from the circumstances of this case and cannot say that Perryman has demonstrated that the buy was not properly controlled or that his trial counsel was ineffective for not challenging the evidence obtained as a result of the search warrant more than counsel already did.

2.      Evidence Rule 404(b)

Perryman argues that his trial counsel was ineffective for failing to object on the basis that the jury should not hear or have heard any evidence of the controlled buy during the State's case-in-chief because the State's use of that evidence went beyond the scope of its admissibility as only possible rebuttal evidence. The State's Notice of Intent to Offer I.R.E. 404(b) Evidence filed on February 27, 2004, states: "It is anticipated that as part of his defense, the defendant will argue or present evidence that the cocaine was possessed, not with the intent to deliver, but for his personal use." Petitioner's Exhibit 5. The State asserted that it was permitted to offer evidence relating to the controlled buy of cocaine and the

_____

[1] Before the 2006 trial, the parties expressed their intent that the court consider the record produced at the hearing on Perryman's first motion to suppress in ruling upon his subsequent motion to suppress evidence or motion to reconsider.

16

subsequent search under Evidence Rule 404(b) to show proof of motive, intent, or absence of mistake or accident. Before the second trial, the State indicated its intent to offer information consistent with the 404(b) motion filed in the first trial.

Perryman alleges that the State presented evidence of the controlled buy and that at no time during the course of the opening statement to the jury, cross-examination of State's witnesses, or closing argument to the jury did Perryman ever make or suggest the claim, feared by the State, that he ever possessed the cocaine for personal use. Perryman also contends that Goodner v. State, 685 N.E.2d 1058 (Ind. 1997), which was cited by the post-conviction court, is not instructive because, unlike the present case, the 404(b) prior drug dealing evidence in Goodner was admissible for purposes of intent precisely because the evidence in that case met the test of Wickizer v. State, 626 N.E.2d 795 (Ind. 1993), requiring the defendant to place his intent at issue in order for the 404(b) evidence to be admissible.

The State notes that trial counsel stated he did not object to this evidence for the strategic reason that the drugs found by the police upon the execution of the search warrant were not the same type of drugs purchased during the controlled buy the previous night. The State contends that trial counsel's strategy appears reasonable in that the difference in the drugs involved on the two days could well have caused the jurors to wonder whether the drugs found on May 5, 2003, were actually possessed by Perryman. The State also argues that beyond the fact that this claim is barred because of trial strategy reasons, Perryman's claim fails in that the evidence did not constitute inadmissible 404(b) evidence because the controlled buy was intrinsic to the acts involved in the crime charged.

17

In his reply brief, Perryman argues that it is absurd to think that any criminal defense attorney would have foregone a meritorious suppression motion and objection that would have likely excluded both the State's 404(b) evidence and all of the evidence from the illegal search of Perryman's apartment to, instead, allow all of that evidence to be presented to the jury so that counsel could argue to the jury that Perryman should be acquitted because the qualities of the drugs from the alleged controlled buy and the search of his residence were chemically different. He also contends that the evidence of the controlled buy was extrinsic rather than intrinsic.

We initially observe that at the post-conviction hearing, Perryman's trial counsel testified that it was a strategic decision to allow the use of 404(b) evidence because the drugs from the controlled buy and the drugs found later were not of the same type based upon lab testing. We also observe that trial counsel filed a Motion to Suppress or in the Alternative Motion to Reconsider challenging the admission of the evidence of the search, which the court denied. Lastly, we cannot say that Perryman has demonstrated a reasonable probability that an objection to the admission of the evidence under Ind. Evidence Rule 404(b) would have been sustained if made.

At the time of the second trial, Ind. Evidence Rule 404(b) provided:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court

18

excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.[2]

Rule 404(b) "was designed to assure that 'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.'" Lee v. State, 689 N.E.2d 435, 439 (Ind. 1997) (quoting Wickizer v. State, 626 N.E.2d 795, 797 (Ind. 1993) (citing Lannan v. State, 600 N.E.2d 1334, 1338 (Ind. 1992))), reh'g denied. "The paradigm of such inadmissible evidence is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." Swanson v. State, 666 N.E.2d 397, 398 (Ind. 1996), reh'g denied. However, the rule does not bar evidence of uncharged criminal acts that are intrinsic to the charged offense. Lee, 689 N.E.2d at 439.

In Wickizer v. State, the Indiana Supreme Court held that "[t]he intent exception in Evid. R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent." 626 N.E.2d 795, 799 (Ind. 1993). Even assuming that only the intent exception applies, that trial counsel did not affirmatively present a claim of particular contrary intent, and that the evidence of the controlled buy was improperly admitted, we cannot say that Perryman was prejudiced given the evidence that the police found approximately sixteen grams of crack cocaine that were individually packaged in the air duct of the residence which Perryman was renting.

Moreover, we cannot say that the evidence in question was extrinsic to the charged crime. At the time of the second trial, Perryman was charged with possession of cocaine in

---

[2] Ind. Evidence Rule 404 was amended effective January 1, 2014.

excess of three grams as a class A felony and possession of marijuana as a class A misdemeanor. The charging information for these counts alleged that Perryman committed these offenses "on or about" May 5, 2003. Appellant's Appendix at 18-19. We also observe that the affidavit for the search warrant referenced the search that occurred on May 4, 2003. Corporal Schroth testified at the second trial that the police obtained a search warrant as a result of the information and items gathered from the controlled buy. We conclude that the evidence in question was intrinsic to the charged crime and not barred by Rule 404(b). See United States v. Shores, 700 F.3d 366, 371 (8th Cir. 2012) (concluding that Federal Rule of Evidence 404(b) did not bar testimony regarding a hand-to-hand transaction that occurred on the day prior to the execution of the search warrant because the testimony was sufficiently intertwined with the charged offenses where the testimony formed a critical component of the officer's basis for obtaining the warrant to search the defendant's residence and was intrinsic evidence), reh'g and reh'g en banc denied, cert. denied, 133 S. Ct. 2780 (2013). Under the circumstances, we cannot say that Perryman has demonstrated that an objection would have been sustained or that the post-conviction court erred on this basis.

      3.      Admonishment / Jury Instruction

Perryman argues that his trial counsel failed to request an admonishment to the jury or tender an instruction on how the jury was to consider in its deliberations the State's 404(b) evidence on the prior alleged controlled buy. Perryman argues that without an admonition or instruction on how to view the evidence of the alleged controlled drug buy, the jury was most assuredly free to take the position that if Perryman sold drugs to the C.I. on Sunday evening,

May 4, 2003, then he must be guilty of possessing with intent to deliver the drugs found in his residence on Monday evening, May 5, 2003, "which is the *forbidden inference* and the prejudice to Perryman that could have been avoided by a simple request to the court from trial counsel that the jury be properly admonished or instructed in the matter." Appellant's Brief at 22. Perryman also argues that the post-conviction court did not address this specific claim in its findings. The State argues that the controlled buy evidence was intrinsic evidence and was not prohibited by Rule 404(b), and thus, that there was no need for any admonishment or limiting instruction concerning this properly admissible evidence.

We have concluded that the evidence in question was intrinsic to the charged crime and not barred by Rule 404(b). We also observe that the police found approximately sixteen grams of crack cocaine that were individually packaged in the air duct of the residence which Perryman was renting. Under the circumstances, Perryman has failed to persuade us that his counsel's performance was deficient and that there is a reasonable probability that but for the absence of a jury instruction limiting the use of the evidence of the controlled buy, the result of his trial would have been different.

### 4. Failing to Question Michelle Weekly Regarding Benefit

Perryman argues that his trial counsel was ineffective for not eliciting testimony from Weekly about the fact that the remainder of her twenty year sentence had been suspended by Perryman's trial judge with the approval of Perryman's prosecutor and only weeks before she appeared to testify against Perryman. Perryman contends that the fact that there is no direct evidence of a deal between the State and Weekly for her testimony against him misses the

21

point. He asserts that any of the information regarding the suspension of Weekly's sentence and the timing involved may easily have allowed the jury to look unfavorably upon Weekly's testimony against him. The State contends that trial counsel's performance as a whole demonstrates that he provided effective impeachment of Weekly by questioning her regarding her guilty plea in this case.

The post-conviction court found that "there is no evidence to support this contention" and that "[i]n absence of such evidence [trial counsel] cannot be criticized for failing to suggest that such evidence exists." Appellant's Appendix at 312. At the post-conviction hearing, the trial court judge for Perryman's trial in 2006 testified that he did not have any independent recollection of suspending Weekly's sentence at a modification hearing on January 19, 2006. The attorney that prosecuted Perryman in 2006 testified that Weekly never asked him for anything in return for her testimony against Perryman, that he did not offer her anything, and that Weekly did not receive a suspended sentence for agreeing to testify against Perryman. He also testified that Weekly's young age, limited criminal history, acceptance of responsibility, and progress in the DOC could be factors impacting the modification of her sentence. The record includes a transcript of the January 19, 2006 hearing in which the court modified Weekly's sentence, and the transcript does not indicate that Weekly's testimony against Perryman was a factor. We cannot say that reversal is warranted on this basis.

5.     Failing to Interview Bowen

Perryman argues that his trial counsel failed to interview Bowen, who was arrested with him and Weekly during the police raid on his residence, and failed to call her as a

witness at trial. The State contends that Perryman's claim fails because trial counsel testified at the post-conviction hearing that he in fact interviewed Bowen and concluded that she would not make an effective witness for the defense.

At the post-conviction hearing, Perryman's trial counsel testified that he believed he interviewed Bowen. When asked why she was not called as a witness, trial counsel testified that he did not feel that the statements she would make would hold up during cross-examination by the prosecutor and did not feel that her memory was strong enough to seem as anything more than grasping at straws. Trial counsel also characterized his decision not to call Bowen as a strategic decision. On redirect examination, trial counsel was asked whether he interviewed Lisa Cooper, and stated:

> I don't know. I'm – I'm going to go back to some of my previous testimony. I interviewed a woman during the middle of the trial who Mr. Perryman informed me would say that she would provide some evidence that he was with her at the time of the incident that formed the basis of the case. I believed it was Brandy Bowen, it may have been Lisa Cooper, I don't know exactly. I cannot recall who it was. Whoever I interviewed I felt would not support his hope that she was going to come in to testify that he was – he had some alibi.

Post-Conviction Transcript at 46-47.

In its order, the post-conviction court found that Bowen "lack[ed] that necessary element of credibility" and that the "failure of [trial counsel] to call Brandy Bowen Murphy as a witness did not prevent Perryman from his right to fair trial because of Brandy Bowen's lack of credibility." Appellant's Appendix at 313. We are not in a position to question the post-conviction court's assessment of witness credibility. See Fisher, 810 N.E.2d at 679

(holding that the post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses). We cannot say that reversal is warranted on this basis.

B.    Record

Perryman asserts that the trial transcript is "chockfull of 'inaudible(s)' when counsel are at the bench conferring with Judge Biddlecome over an objection or some other matter." Appellant's Brief at 28. Perryman argues that he raises this issue as a claim demonstrably unavailable at the time of trial and direct appeal therefore making it cognizable as a claim of error in post-conviction relief proceedings. He contends that the trial court was aware of the recording problem in the court in light of Kien v. State, 782 N.E.2d 398 (Ind. Ct. App. 2003), reh'g denied, trans. denied, in which the court addressed a defendant's argument on direct appeal that the same trial court as in this case acted in a manner that did not comply with the mandate of Criminal Rule 5 which requires trial courts to arrange and provide for the recording of objections. Perryman asserts that "possible objections at trial were needlessly lost for direct appeal purposes without counsel's knowledge, and Perryman therefore could not have had a fair trial." Id. at 30. He argues that his "ability to appeal any error regarding objections and trial court rulings at his trial was severely compromised because most of those bench conferences and rulings are nonexistent in his trial record, and [he] could not appeal what does not exist, which is the prejudice to [him] in this matter." Id.

The State argues that this issue is unavailable for post-conviction proceedings because many "inaudibles" are readily observed in the transcript that was used for the second direct appeal which undermines his claim that this issue was demonstrably unavailable at the time

of his second direct appeal. Appellee's Brief at 23. In his reply brief, Perryman argues that the State misunderstands the issue, and that "[w]hat made the claim unavailable for direct appeal was the unknown reason for 'why' Perryman's transcript was a mess, which required a post-conviction evidentiary hearing to make that determination." Appellant's Reply Brief at 10. He asserts that during the post-conviction hearing, it was shown that trial counsel did not know about any recording problems in the trial court, the presiding judge did not so inform counsel, and the result is that Perryman was left with a transcript that could not be reconstructed and was, therefore, so deficient as to have made a fair and complete direct appeal of Perryman's convictions an impossibility.

The portions of the record cited to by Perryman at the hearing on his motion to reconstruct the record contain such statements as "Sidebar; inaudible to report." See 2006 Transcript at 197, 200, 204, 207, 214, 225, 238. The transcript on the direct appeal from the 2006 trial included these notations indicating that certain portions were inaudible. Perryman did not raise the claims of an insufficient record on direct appeal and does not allege that his trial counsel or appellate counsel were ineffective on these bases. Consequently, we conclude that Perryman waived these claims. See Reed v. State, 866 N.E.2d 767, 768 (Ind. 2007) (holding that only issues not known at the time of the original trial or issues not available on direct appeal may be properly raised through post-conviction proceedings); Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002) (holding that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably

unavailable at the time of trial or direct appeal" and that it is wrong to review the petitioner's fundamental error claim in a post-conviction proceeding); Lambert v. State, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with a "super-appeal" or opportunity to consider freestanding claims that the original trial court committed error and that such claims are available only on direct appeal), reh'g denied, cert. denied, 534 U.S. 1136, 122 S. Ct. 1082 (2002).

For the foregoing reasons, we affirm the post-conviction court's denial of Perryman's petition for post-conviction relief.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.