**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 23 2014, 10:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**RICHARD DENNING**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY BLACKMON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1406-PC-423 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-9206-PC-80375

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Upon the denial of his petition for post-conviction relief, Jeffery W. Blackmon appeals, contending that the post-conviction court erred when it found that appellate counsel was not ineffective for failing to challenge Blackmon's sentence as being erroneous and manifestly unreasonable.[1]

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts supporting Blackmon's convictions as set forth by our Supreme Court on direct appeal are as follows:[2]

> The defendant was a former Stationers[3] employee. He entered the store at approximately 4:45 p.m. on Friday, May 29, 1992. Stationers employee Robert Willey spoke with the defendant as he selected three legal forms offered for sale and asked where to find the collection of cardboard cut-outs such as those of a pig, a baby, and Marilyn Monroe which were displayed in the front of the store. The store was due to close at 5:00 p.m., and Willey left at approximately 4:55 p.m. to catch a bus, leaving only the defendant and Willey's co-employee, Fedayeen Turner, in the store. Turner was never again seen alive.
>
> Early on Monday, June 1, 1992, the manager of the store arrived to find its lights on. He discovered Turner's body lying face down in the office of the store and observed an empty cash register drawer on the floor, a brass disc from the tip of an umbrella, and the cash register tape displaying an incomplete last transaction for items totalling $29.78 and indicating that no payment had been tendered. Cash in excess of $250.00 was missing. Turner had been killed by a .22 caliber bullet to the back of his head. The police found the defendant's fingerprints on a greeting card lying on the counter at the checkout register, on a Stationers bag located on top of the empty cash

---

[1] Before January 1, 2003, an appellate court needed to find that a trial court's sentence was "manifestly unreasonable" before it could revise the sentence. *Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006). Burns filed Blackmon's direct appeal in 1994.

[2] For his convictions, the trial court ordered Blackmon to serve an aggregate sentence of eighty-one years. Blackmon filed his direct appeal with the Indiana Supreme Court in 1994 because, at that time, a defendant who was ordered to serve a sentence greater than fifty years could appeal directly to the Supreme Court.

[3] Stationers was an office supply and gift shop.

drawer found on the floor of the store, and on one of the store's entrance doors.

On the afternoon of Friday, May 29, 1992, the defendant had shown a .22 caliber handgun to a friend. Later that evening, another of his friends saw him with a .22 caliber handgun. During that evening, the defendant gave friends gifts including a troll key chain, a pig key chain, and a cardboard cut-out statue of Marilyn Monroe. The defendant was observed that evening with a stack of folded money approximately four inches thick.

The cash register tape found at the murder scene recorded a transaction made at approximately 4:59 p.m. on Friday, May 29, 1992. The entries shown on the register tape were those which would have been made for a purchase of the greeting card found with the defendant's fingerprints, three legal forms, the troll key ring, the pig key ring, and the Marilyn Monroe cut-out.

Beginning the day following the incident, the defendant stayed at a series of two hotels, registering with a false name at each. When he checked out of the first hotel, an umbrella missing a brass disc similar to the one found at the Stationers store was found in the room he had occupied.

The week of the murder, the defendant told an acquaintance that if he had to kill someone, he would shoot them in the back of the head. Another acquaintance testified that in approximately mid-May of 1992, the defendant said that "he always had to have money, that he had to have money in his pocket, he liked having money, he couldn't deal unless he had money in his pocket." When asked whether he would ever kill somebody, the defendant told his acquaintance, "If I needed the money bad enough, I would."

*Blackmon v. State*, 647 N.E.2d 1126, 1128 (Ind. 1995) (citations omitted).

Blackmon was charged with murder, felony murder, Class A felony robbery, and Class A misdemeanor carrying a handgun without a license. The jury convicted Blackmon of all four counts, and the trial court entered conviction as to the murder count, the robbery count, and the handgun count. Satisfying double jeopardy concerns, the trial court reduced the robbery conviction from a Class A to a Class B felony and did not enter judgment of conviction as to the felony murder count, finding that it would merge into the murder

3

conviction. *Tr.* at 1153. In pronouncing the sentence, the trial court made the following statement regarding the aggravating and mitigating circumstances:

> The Court has read the presentence report and heard the testimony submitted. The Court has also heard the evidence submitted during trial. The Court does find the following aggravating circumstance, in that the Defendant's prior criminal history involving convictions for fraud and theft on July 10 of '91 and for criminal conversion on June 29, of '92. The Court further finds that there are aggravating circumstances in that the robbery was planned; that the Defendant did, in fact, wait until closing before he began his steps to take— to perform the robbery and the ensuing murder. The Court does find by reason of mitigation the Defendant's age in this matter. The Court would find also that the Court would be sentencing the Defendant as to Count One to a period of 60 years; as to Count Three, a period of 20 years; as to Count Four, a period of 1 year. The Court further finds further aggravation and the reason that the counts should all run consecutively in that the Defendant did not, from any evidence submitted, appear to have—had any need to murder the victim, which, in fact, was done needlessly. For this reason, all counts will run consecutively.

*Id.* at 1154-55.

On direct appeal, Blackmon's appellate counsel, Timothy Burns, filed a twenty-page brief with the Indiana Supreme Court challenging the sufficiency of the evidence. *Pet'r's. Ex.* 1. The Supreme Court affirmed the convictions. *Blackmon*, 647 N.E.2d at 1128. Thereafter, our Supreme Court denied a motion for rehearing, and the United States Supreme Court denied certiorari in October 1996.

Blackmon, acting pro se, filed a petition for post-conviction relief in July 1997, but withdrew this petition without prejudice in January 2003. In April 2011, again acting pro se, Blackmon filed a petition for post-conviction relief claiming as grounds for relief the ineffective assistance of trial and appellate counsel, and free-standing claims regarding his sentence. The State filed an answer in May 2011, denying the material allegations and asserting the defenses of waiver and res judicata. *Appellant's App.* at 308. At the May 21,

2013 post-conviction hearing, Blackmon, by counsel, stated his intention to proceed solely on the claim that appellate counsel was ineffective.

At the post-conviction hearing, Burns testified that he had been in practice for thirty-nine years, mainly working in the area of criminal law, doing both criminal defense and appeals. He said that he began his career as a deputy attorney general. After about a year and a half, Burns served as a public defender in criminal court for three years and then moved to private practice. Burns testified that due to the passage of time—since the direct appeal was filed in 1994—he had limited recollection of Blackmon's case and no longer had a file for Blackmon. Even so, Burns stated that it was his standard practice to raise all issues of merit and not abandon any.

Burns testified that when he puts together an appeal, "Well, obviously, I read the record carefully and it's different now than it was many years ago." *P-CR Tr.* at 15. When asked what his main considerations are in writing a brief, Burns stated, "the main considerations would be being sure that issues that are meritorious and have some chance of either reversal or, or having the case remanded or brought to the Court of Appeals, or I think in this case the Supreme Court's attention. Those are the main things." *Id.* at 16. Burns recalled that he met with Blackmon several times, "really focusing on the evidence of, of that conviction itself." *Id.* at 18. "I felt like there was . . . really a reasonably good chance of reversal on the, on the merits of the case itself. I thought there was a lack of evidence on some points, but I don't remember the details." *Id.* at 19. Burns recalled "it was a largely circumstantial evidence case," and felt that it "was one of those kind of cases

that probably if it had been tried ten times, maybe three or four of those times it would have been a different result. I can remember that much." *Id*. at 23.

Regarding his failure to challenge Blackmon's sentence, Burns said, "About the only, the only reaction I can have to that is back at that time I don't think that a lot of sentencing issues were really being litigated on, on appeal, at least as I recall." *Id*. at 20. While Burns did not specifically recall whether he considered challenging the length or consecutive nature of Blackmon's sentence, Burns said, that at the time of the appeal, he was aware of the applicable standards of review for challenging a sentence. *Id.* at 24.

The State and Blackmon, by counsel, filed their respective proposed findings of fact and conclusions thereon. Thereafter, the post-conviction court denied Blackmon's petition for post-conviction relief on May 22, 2014, finding that Blackmon: (1) had failed to prove that it was unquestionably unreasonable for appellate counsel not to raise the sentencing issues on direct appeal; and (2) had not shown a reasonable probability that such claims would have been successful if raised, or were stronger than the claim raised by Burns. *Appellant's App.* at 341, 343. Blackmon now appeals.

**DISCUSSION AND DECISION**

Post-conviction relief does not afford a petitioner with a super-appeal. *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). If an issue was known and available, but not raised on direct appeal, it is waived. *Garrett*, 992 N.E.2d at 718. Further, in a post-conviction proceeding, the petitioner bears the burden of

6

establishing his claim by a preponderance of the evidence. *Perryman v. State*, 13 N.E.3d 923, 930 (Ind. Ct. App. 2014), *trans. denied*; *see also Ben–Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind. 2000) (because post-conviction proceedings are civil proceedings, petitioner bears burden of establishing grounds for relief by preponderance of evidence), *cert. denied*, 534 U.S. 1164 (2002). Here, the post-conviction court denied relief. Therefore, Blackmon is appealing from a negative judgment and faces the rigorous burden of showing that "the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court." *Perryman*, 13 N.E.3d at 930-31.

"The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel." *Mitchell v. State*, 946 N.E.2d 640, 644 (Ind. Ct. App. 2011) (citing *Reed v. State,* 856 N.E.2d 1189, 1195 (Ind. 2006)), *trans. denied.* "To establish a post-conviction claim alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." *Garrett*, 992 N.E.2d at 718. First, the defendant must show appellate counsel was deficient in his or her performance, *i.e.*, "that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Id*. at 718-19 (citing *Strickland*, 466 U.S. at 687). Second, the defendant must show that the deficient performance prejudiced the defense, *i.e.,* "that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable." *Id.* at 719. To establish prejudice, a defendant must show that "there is a reasonable probability that,

7

but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id*. at 719 (citing *Strickland*, 466 U.S. at 694). "The two prongs of the *Strickland* test are separate and independent inquiries." *Timberlake,* 753 N.E.2d at 603. "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Timberlake,* 753 N.E.2d at 603 (quoting *Strickland,* 466 U.S. at 697).

Here, Blackmon contends that his appellate counsel was ineffective for failing to raise the issue that Blackmon's sentence was erroneous both because the trial court used improper aggravators and because an eighty-one-year sentence was manifestly unreasonable in light of the nature of the offense and the character of the offender. Ineffective assistance claims regarding appellate counsel, "generally fall into three basic categories: (1) denial of access to an appeal, (2) failure to raise issues that should have been raised, *i.e.*, waiver of issues; and (3) failure to present issues well." *Id*. at 724 (internal quotation marks omitted). Here, Blackmon's claim is based upon the waiver of issues category. "When evaluating a claimed deficiency in appellate representation due to an omission of an issue, a post-conviction court is properly deferential to appellate counsel's choice of issues for appeal unless such a decision was unquestionably unreasonable. *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012) (citations omitted) (quotation marks omitted).

> Such deference is appropriate because the selection of issues for direct appeal
> is one of the most important strategic decisions of appellate counsel.
> Appellate counsel's performance, as to the selection and presentation of
> issues, will thus be presumed adequate unless found unquestionably

unreasonable considering the information available in the trial record or otherwise known to the appellate counsel. In crafting an appeal, counsel must choose those issues which appear from the face of the record to be most availing. . . . Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing.

*Id.* at 491-92 (citations omitted) (internal quotation marks omitted).

Here, the post-conviction court held that appellate counsel was not ineffective for failing to raise the issues regarding sentencing, specifically that the sentence was both erroneous and manifestly unreasonable. We agree. In 1994, at the time of the direct appeal, Burns had been a practicing attorney for twenty years,[4] had practiced primarily in the area of criminal law, and earlier in his career, had served as both a deputy attorney general and a criminal public defender. While the passing of time had dimmed Burns' memory of the case, he testified at the post-conviction hearing that he met with Blackmon several times, in preparation for the appeal, and "really focus[ed] on the evidence of, of that conviction itself." *P-CR Tr*. at 18. "I felt like there was . . . really a reasonably good chance of reversal on the, on the merits of the case itself." *Id*. at 19. Burns recalled "it was a largely circumstantial evidence case," and felt that it "was one of those kind of cases that probably if it had been tried ten times, maybe three or four of those times it would have been a different result. I can remember that much." *Id*. at 23. Burns testified that he thought he had a very good chance with the sufficiency claims. Additionally, Burns testified that, at the time of Blackmon's direct appeal, "I don't think that a lot of sentencing issues were

---

[4] During the 2013 post-conviction hearing, Burns testified that he had been in practice for thirty-nine years.

9

really being litigated on, on appeal, at least as I recall." *Id.* at 20.

The post-conviction court concluded that Burns presented a well-developed argument in Blackmon's brief on direct appeal and in his brief requesting rehearing. *Appellant's App.* at 340. Burns also petitioned to the United States Supreme Court for certiorari. "The sufficiency of the evidence issue raised was pertinent and strong given that Blackmon's convictions were based entirely on circumstantial evidence." *Id.* (citing *Blackmon*, 647 N.E.2d at 1127-28). The post-conviction court concluded, and we agree, that appellate counsel's "performance in general was well within an objective standard of reasonableness based on 'prevailing professional norms,'" and that Blackmon failed to prove otherwise. *Id.*

Blackmon's claim that Burns was ineffective for not raising the sentencing issues fails not only under the performance inquiry but also under the prejudice analysis. Blackmon committed his crimes in 1992. At that time, the presumptive sentence for murder was forty years, with no more than twenty years added for aggravating circumstances and no more than ten years subtracted for mitigating circumstances. Ind. Code § 35-50-2-3. The presumptive sentence for robbery as a Class B felony was ten years, with no more than ten years added for aggravating circumstances and no more than four years subtracted for mitigating circumstances. Ind. Code § 35-50-2-5. Finally, the sentence for Class A misdemeanor carrying a handgun without a license was no more than one year. The trial court sentenced Blackmon to the maximum sentence allowable for each crime and ordered the sentences to be served consecutively for an aggregate of eighty-one years executed.

10

At the time of sentencing, Blackmon's criminal history was as follows. In April 1991, Blackmon was charged with Class D felony fraud, Class D felony theft, and Class A misdemeanor criminal conversion; the first two counts were dismissed, but he was convicted of Class A misdemeanor criminal conversion and sentenced to one year suspended plus fines and costs. In January 1992, Blackmon was charged with, and later convicted of, Class A misdemeanor criminal conversion for having taken furniture from his former employer, Hair Realty Company, and was sentenced to twenty days executed and forty days suspended, plus fines and costs. In June 1992, Blackmon was charged with two counts of Class B felony robbery and three counts of Class A misdemeanor criminal conversion for having robbed a Hallmark store, at gunpoint, just two days prior to committing the instant offenses.

The trial court noted that Blackmon's age, being nineteen years old when he committed the crimes, was a mitigating factor. As support for the imposition of the maximum sentence, however, the trial court cited to Blackmon's criminal history as an aggravating circumstance. *Trial Tr*. at 1154. Specifically, the trial court cited Blackmon's 1991 convictions for fraud and theft, his 1992 conviction for criminal conversion, and the fact that the robbery was planned. The trial court also found that Blackmon's sentences should run consecutively because the murder was "done needlessly." *Id*. at 1155.

Blackmon correctly notes that it was improper for the trial court to use theft and fraud convictions as aggravators, because he was not convicted of those charges. Nevertheless, it was absolutely proper for the trial court to use Blackmon's criminal history and the manner in which he committed the crimes to support imposing an enhanced

11

sentence and consecutive terms of imprisonment. Ind. Code § 35-38-1-7.1(b)(2) (1992). Blackmon had two convictions for Class A misdemeanor criminal conversion as well as pending charges for two counts of Class B felony robbery and three counts of Class B felony criminal confinement, for crimes he committed just two days before the instant offenses. Enhanced sentences that are served consecutively may be imposed when the only aggravating circumstance is the defendant's prior criminal history," even if that history consists of two Class A misdemeanor convictions. *See Adkins v. State*, 703 N.E.2d 182, 187 (Ind. Ct. App. 1998) (criminal history consisting of single Class A misdemeanor conviction supported imposition of maximum sentence of two consecutive twenty-year sentences as punishment for two Class B felony convictions). "Furthermore, a trial court may evaluate any other factor which reflects on the defendant's character, good or bad when determining the appropriate sentence to impose." *Id*. (citations omitted) (internal quotation marks omitted). To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Garrett*, 992 N.E.2d at 719 (citing *Strickland*, 466 U.S. at 694). Here, where Blackmon has failed to show that the result would have been different if Burns had raised the issue of erroneous sentence on direct appeal, no prejudice has been shown.

Next, Blackmon contends that appellate counsel was ineffective for failing to raise the issue that an eighty-one-year sentence for his three convictions was manifestly unreasonable. The post-conviction court found that Blackmon had neither proven that this issue would have been successful on appeal, nor had he proven that Burns' decision not to

challenge this issue was unquestionably unreasonable. *Appellant's App.* at 334. We agree with the post-conviction court. At the time of Blackmon's appeal, appellate courts could revise a sentence in light of the nature of the offense and the character of the offender pursuant to Indiana Appellate Rule 17(B), the predecessor to Indiana Appellate Rule 7(B).

Our Supreme Court "has recognized that the barrier for relief under our former Appellate Rule 17(B) was incredibly high and thus relief was seldom granted." *Reed v. State*, 856 N.E.2d 1189, 1198 (Ind. 2006) (citing *Serino v. State,* 798 N.E.2d 852, 856 (Ind. 2003); *see also Prowell v. State,* 687 N.E.2d 563, 568 (Ind. 1997) ("[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so."), *cert. denied,*525 U.S. 841 (1998); *Gregory v. State,* 644 N.E.2d 543, 545 (Ind. 1994) (power to review and revise used "sparingly"). In fact, our Supreme Court explained the difficulty of prevailing on a claim that a sentence was manifestly unreasonable as follows:

> Before January 1, 2003, an appellate court needed to find that a trial court's sentence was "manifestly unreasonable" before it could revise the sentence. "This barrier was so high that it ran the risk of impinging on another constitutional right contained in Article 7, that the Supreme Court's rules shall 'provide in all cases an absolute right to one appeal.'" *Serino,* 798 N.E.2d at 856 (quoting Ind. Const. art. VII, § 6). As a result, effective January 1, 2003, the rule was amended to authorize an appellate court to revise a sentence if it finds "after due consideration of the trial court's decision" that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). This formulation placed the central focus upon the role of the trial judge, while at the same time reserving for the appellate courts the chance to review sentencing decisions in a climate more distant from local clamor. *Serino,* 798 N.E.2d at 856–57.

*Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006).

13

Blackmon was a former employee of Stationers. In May 1992, right at closing time, Blackmon entered Stationers, shot the cashier in the back of the head, and stole $250.00 and merchandise. Two days prior, Blackmon had robbed workers in a Hallmark store at gunpoint. About four months earlier, Blackmon had stolen property from another former employer. Blackmon has failed to prove that in light of the nature of the offense and the character of the offender, especially considering the high barrier for relief under Appellate Rule 17(B), that he would have prevailed on direct appeal under the theory that his sentence was manifestly unreasonable.

Based on the foregoing, we conclude that Blackmon was not denied the effective assistance of appellate counsel. Therefore, we affirm the post-conviction court's denial of Blackmon's petition for relief.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.